Judith GURMANKIN, on behalf of herself and all other persons similarly situated, Appellant,

v.

Matthew COSTANZO, Superintendent of the School District of Philadelphia; Murray Bookbinder, Executive Director of Personnel and Labor Relations; Martin K. Ferrier, Director of Professional Personnel; and Board of Education of the School District of Philadelphia.

No. 79–1927.

United States Court of Appeals, Third Circuit.

Argued Jan. 15, 1980.

Decided July 15, 1980.

Jonathan M. Stein (argued), Community Legal Service, Inc., Philadelphia, Pa., for appellants.

Robert T. Lear (argued), Asst. Gen. Counsel, School Dist. of Philadelphia, Philadelphia, Pa., for appellees.

Before HUNTER, VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is the third occasion this court has considered an aspect of this litigation. On the first appeal, dealing with the liability issue, we affirmed the holding of the trial court that the policy of the School District of Philadelphia[1] which excluded blind teachers from teaching sighted students in the public schools violated the due process rights of appellant, Judith Gurmankin, a blind school teacher, plaintiff in the district court. *Gurmankin v. Costanzo*, 556 F.2d 184 (3d Cir. 1977), *affirming* 411 F.Supp. 982 (E.D.Pa.1976). The second appeal dealt with the extent of remedial relief to which Ms. Gurmankin was entitled. We held that, in addition to the injunction which the trial court had issued requiring the School District to provide Ms. Gurmankin with a position as an English teacher at one of six designated schools, she was also entitled to an award of backpay beginning from the date the trial court had previously found she would have been offered employment absent discrimination. We affirmed the trial court's finding that a court order directing the School District to award tenure to Ms. Gurmankin would not be appropriate under the circumstances, since the School District was entitled to an opportunity to evaluate Ms. Gurmankin's qualifications and performance as a teacher. *Gurmankin v. Costanzo*, 626 F.2d 1115 (3d Cir. 1980).

On this appeal, Ms. Gurmankin appeals from the order of the district court refusing to certify the class Ms. Gurmankin sought

---

1. Defendants are Michael Marcase, Superintendent of the School District of Philadelphia (who replaced Matthew Costanzo, the original defendant), Murray Bookbinder, Executive Director of Personnel and Labor Relations, Martin K. Ferrier, Director of Professional Personnel, and the Board of Education of the School District of Philadelphia, jointly referred to throughout as School District.

to represent.[2] Plaintiff sought to represent a class of

> all visually handicapped individuals qualified to teach in the public schools of Philadelphia, who by virtue of their handicap have been, are or will be unable to obtain and secure permanent teaching positions, including in classrooms of non-handicapped children, in the Philadelphia public schools.

In denying class certification, the district court found that the numerosity requirement of Fed.R.Civ.P. 23(a)(1) ("The class is so numerous that joinder of all members is impracticable") had not been satisfied. The court found that of the six other persons identified by plaintiff as claiming they were either rejected for a teaching position by the School District because of their blindness, or deterred from applying because of the School District policy, only two actually qualified as class members besides Ms. Gurmankin. The court concluded that a class composed of three persons does not meet the numerosity requirement. The court also rejected as too "speculative" plaintiff's claim that, because some of the 660 blind individuals who qualify annually as teachers would seek employment in Philadelphia public schools as teachers of sighted children, a sufficient number of unidentified class members exist to satisfy the numerosity requirement. The court recognized that the proposed class was not limited to persons presently affected, as plaintiff sought to include in the class those individuals who may be victims of defendant's unlawful activities in the future. The court held, however, that plaintiff had failed to show the number of future class members was so large as to render their joinder impracticable. Finally, the court ruled that even though plaintiff's "most compelling argu-

ment in support of her class certification motion involves rendering effective relief," the principle of *stare decisis* and the School District's offer to announce the end of its discriminatory policies "will help to inform blind persons of the defendant's revised policy."

Although plaintiff argues on appeal that the trial court erred in failing to consider all of the individuals whom she had identified as potential class members, our review of the record shows no basis to overturn the court's finding that there were too few individuals who had in the past been affected by the School District's actions to meet the numerosity requirement. This leaves for consideration plaintiff's principal arguments which can be summarized as: (1) where classwide employment discrimination has been proven, the numerosity requirement serves little, if any, function, and (2) the number of future class members must be taken into account in order to provide effective classwide remedial relief.

The function of the numerosity requirement in cases of classwide discrimination where only prospective equitable relief is sought is far from clear. Plaintiff argues with some force that once employment discrimination against a class has been proven, the case presents an "inherent class action" situation. Plaintiff notes that this is the fact pattern for which the Rule 23(b)(2) class action category was designed, and refers to the statement by the Advisory Committee that certification would be appropriate "even if [the action or inaction] has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Advisory Committee Note to the 1966 Amendments to Rule 23(b)(2), *reprinted in* 39 F.R.D. 69, 102

---

**2.** At the time of the order denying the class certification, there had been no determination of the issue of attorney's fees and costs. After the court requested supplementary briefs directed to the issue of the finality of that order, counsel notified the court that the issue of attorney's fees and costs had been settled. We have previously held that even if the notice of appeal were premature because attorney's fees had not been decided, the subsequent resolu-

tion of the attorney's fee issue satisfied the requirement of finality in the absence of a showing of prejudice to the other party. *See Richerson v. Jones,* 551 F.2d 918, 921–23 (3d Cir. 1977). Therefore we need not decide whether the order would have been final in the absence of such a resolution. *Cf. DeLong Corporation v. Raymond International, Inc.,* 622 F.2d 1135 at 1138–39 n.3 (3d Cir. 1980).

(1966). As we noted in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), "an [employment discrimination] action is particularly fit for [class action] treatment" because it is "necessarily a suit to end discrimination [based on] a common class characteristic." *Id.* at 250.

Several other courts have suggested that the numerosity requirement should not be employed in a mechanical manner to preclude the use of the class action device in precisely the kind of situation for which it is most appropriate. *See, e. g., Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (liberal construction given to numerosity requirement in civil rights suit seeking, *inter alia*, injunctive relief on behalf of future class members); *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (per curiam) (presence of unknown future blacks apparently satisfied class requirements in discrimination action brought by former employee); *Afro-American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (class action particularly suited to protect future potential victims of discrimination.) *See also Scott v. University of Delaware*, 601 F.2d 76, 93 (3d Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979) (Adams, J., concurring). A number of authorities and commentators have also minimized the significance of the numerosity requirement in classwide discrimination cases. *See* 1 Newberg on Class Actions § 1105g, at 177 (1977); 7 Wright & Miller, Federal Practice and Procedure, § 1771 at 663 (1972); Note, *Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(b)(2)*, 88 Yale L.J. 868 (1979).

▮ We are not prepared to read the numerosity requirement out of the class action rule, even when the suit is one for employment discrimination; we are not authorized to do so since the rule does not permit elimination of any of the four prerequisites established in Rule 23(a)(1) for any particular kind of case. *See Alexander v. Gino's, Inc.*, 621 F.2d 71 at 74–75 (3d Cir. 1980). We believe that the numerosity requirement must be evaluated in the context of the particular setting, and agree that it may pose less of an obstacle when there has been classwide discrimination and the representative party seeks only prospective remedial relief than when the suit is for damages under Rule 23(b)(3). But even in the former context, the district court is free to exercise its discretion against certification of a class if it finds the number of persons who have been affected in the past or may be affected in the future is too few to warrant class treatment. As the Supreme Court noted in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977), even in suits alleging racial or ethnic discrimination, which "are often by their very nature class suits, involving classwide wrongs [,] . . . careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable." Although the Court was discussing adequacy of representation rather than numerosity, the language is equally appropriate here. Accordingly, we do not believe, as plaintiff suggests, that the district court gave too much emphasis to the numerosity requirement in declining to certify the class.

Plaintiff's other argument, although related, has a different focus since it is directed to the need for rendering effective relief. The district court termed this "plaintiff's most compelling argument." The court stated:

> This Court previously found that defendants unlawfully failed to consider blind persons as teachers of sighted children. Relief thus far has been limited to the named plaintiff and there has been no relief granted or sought to prevent that conduct from recurring. Nor, have defendants been compelled to inform blind persons that defendants no longer engage in the unconstitutional conduct. But, on the other hand, defendants are not at liberty to exclude blind persons from consideration as teachers of sighted children. The principle of *stare decisis* should dis-

courage, if not prevent, defendants from repeating their unlawful actions. *See Vaccarella v. Fusari*, 365 F.Supp. 1164 (D.Conn. [1973]). As to informing blind persons that defendants will discontinue its unlawful activities, they have offered to announce, in whatever "form or media the court believes appropriate, that the School District encourages and will accept the applications of qualified blind teachers in the same manner as non-handicapped teachers." *See* Defendants' Supplemental Memorandum of Law in Opposition to Motion for Class Determination, re: Numerosity. The Court thinks it appropriate that notices to such effect be sent to college placement offices throughout the east coast and to high schools in Pennsylvania, including institutions for the education of the visually handicapped. In addition, periodically, such notices should be placed in braille newspapers circulated throughout the state. It is the hope of the Court that these actions will help to inform blind persons of the defendants' revised policy. Of course, the Court will be more than willing to render any further assistance it can in eliminating unlawful discrimination. But, for the reasons stated, certification of a class does not appear to be the appropriate method in this case.

It is apparent that the district court recognized the need for a decree which rendered effective relief not only to the named plaintiff but also to those blind persons who may have been deterred from applying for positions as teachers of sighted children because they were unaware of "defendants' revised policy." It is also apparent that the district court relied on its "hope" that the School District would take action to provide the notice needed to ameliorate the effects of its past discriminatory policy.

The School District has urged us to affirm the trial court's order, stating "the absence of a class certification does not prohibit the lower court from rendering further assistance to eliminate unlawful discrimination. One such method is discussed by the court in its opinion . . . and defendants have advised the court of their willingness to discuss additional affirmative steps." Brief for Appellees at 13–14. However, on oral argument before this court the School District conceded that it has taken none of the actions referred to in the district court's opinion as needed to inform blind persons that it would "discontinue its unlawful activities." The School District has not made any public announcement regarding the acceptance of applications by qualified blind teachers, it has sent no notices to college placement offices, to high schools, or to institutions for the visually handicapped, and it has placed no notices in braille newspapers.

The School District concedes that the district court has the ability to render relief which is operative beyond the named plaintiff, citing in its brief *Walker v. Robbins Hose Fire Co. No. 1, Inc.*, 76 F.R.D. 218, 223 (D.Del.1977). The district court's opinion clearly indicates that the court was under the impression that there was a commitment by the School District at least to take the affirmative action referred to in the opinion to rectify past wrongs. The need to provide effective remedial relief is adequately supported by evidence in the record. For example, a blind teacher teaching elsewhere filed an affidavit stating that he had been discouraged from pursuing a career in public school teaching by a representative of the State Office of the Blind, and expressing his belief that those "counseled against pursuing public school teaching careers in Philadelphia and . . . others like them now in school will need positive encouragement by the School District to apply to become teachers."

■ The School District's failure to undertake, on its own, effective remedial relief demonstrates that *stare decisis* may be too fragile a basis for a court to decline to take action necessary to ensure eradication of conduct found to be unconstitutional. We believe that under the broad power vested in us "to remand the cause and . . . require such further proceedings to be had as may be just under the circumstances," 28 U.S.C. § 2106 (1976), we should vacate the

judgment and remand this case for reconsideration by the district court of the need for effective remedial relief. If, on remand, the School District is unwilling to stipulate as to such relief, then the district court may enter the appropriate remedial decree which will insure not only the elimination of the unlawful discrimination but the adequate publication of the new policy.

Therefore, we will vacate the judgment and will remand this case to the district court for further consideration of the appropriate relief to be ordered.

