**PRECEDENTIAL**
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1785
_____

GARFIELD GAYLE; NEVILLE SUKHU;
SHELDON FRANCOIS,
                                        Appellants

v.

WARDEN MONMOUTH COUNTY CORRECTIONAL
INSTITUTION; SCOTT A. WEBER, in his official capacity
as Newark Field Office Director for Detention and Removal;
*SARAH R. SALDANA, in her official capacity
as Assistant Secretary of U.S. Immigration and Customs
Enforcement; SECRETARY UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA; JUAN OSUNA, in his official capacity as
Director of Executive Office of Immigration Review;
JOHN TSOUKARIS, in his official capacity as
Field Office Director for Enforcement and Removal
Operations, Newark Field Office of U.S. Immigration and
Customs Enforcement; CHRISTOPHER SHANAHAN, in his
official capacity as Field Office Director for Enforcement and
Removal Operations, New York Field Office of U.S.
Immigration and Customs Enforcement;

WARDEN BERGEN COUNTY JAIL;
JOSEPH TRABUCCO, in his official capacity as Director of
the Delaney Hall Detention Facility;
WARDEN ELIZABETH COUNTY DETENTION CENTER;
WARDEN ESSEX COUNTY CORRECTIONAL
FACILITY; OSCAR AVILES, in his official capacity as
Director of the Hudson County Correctional Facility

*Pursuant to Fed. R. App. P. 43(c)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-12-cv-02806)
Honorable Freda L. Wolfson, U.S. District Judge

_____

Argued: February 10, 2016

Before: FUENTES, KRAUSE, and ROTH, *Circuit Judges*

(Filed: September 22, 2016)

Lawrence S. Lustberg
Joseph A. Pace
Gibbons
One Gateway Center
Newark, NJ 07102

Judy Rabinovitz      [ARGUED]
Michael K.T. Tan
American Civil Liberties Union
Immigrants' Rights Project
125 Broad St.
18th Floor
New York, NY 10004
      *Counsel for Appellants*

Craig W. Kuhn
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Elizabeth J. Stevens      [ARGUED]
United States Department of Justice
Office of Immigration Litigation
450 5th Street, N.W.
Washington, DC 20001
      *Counsel for Appellees*

Andrew S. Amer
Simpson, Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017
      *Counsel for Amicus-Appellants*

_____

OPINION
_____

3

KRAUSE, *Circuit Judge*.

Over the course of the last four years, Appellants Garfield Gayle, Neville Sukhu, and Sheldon Francois have been litigating, and the Government, defending, a purported class action to challenge the constitutionality of 8 U.S.C. § 1226(c), the section of the Immigration and Nationality Act that requires the mandatory detention of aliens who have committed specified crimes. The parties' significant investment of time and effort culminated in partial grants and partial denials of summary judgment and two thoughtful and thorough opinions of the District Court that are now the subject of able briefing by the parties and amici on appeal. It is especially unfortunate, then, that when it ruled on the merits, entered injunctive relief on Appellants' individual claims, and then denied class certification on the ground that it was not "necessary" in view of that injunction, the District Court put the cart before the horse as to both federal jurisdiction and our class action jurisprudence. That is, once Appellants were released from detention, their individual claims became moot so the District Court retained jurisdiction only to rule on Appellants' motion for class certification—not to decide the merits issues, much less to order individual relief. So too is our appellate jurisdiction limited to the denial of class certification.

Because the District Court exceeded its jurisdiction by adjudicating the merits issues and also adopted a doctrine of "necessity" to deny class certification instead of analyzing the criteria enumerated in Rule 23 of the Federal Rules of Civil Procedure, we will vacate the judgment and the relevant orders of the District Court and will remand for further proceedings.

4

# I.

## A.

Appellants are foreign nationals and Lawful Permanent Residents of the United States. As a result of various state-law criminal convictions, the United States Immigration and Customs Enforcement ("ICE") sought to remove each Appellant from the United States. Pending their removal proceedings, each was detained pursuant to 8 U.S.C. § 1226(c), which provides that where ICE has "reason to believe" that an alien is "deportable" or "inadmissible" by virtue of having committed one of a number of specified crimes or being involved in activities threatening national security, that alien "shall" be taken into custody "when the alien is released [from detention for those crimes], without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."[1] 8 U.S.C. § 1226(c); *In re Joseph*, 22 I. & N. Dec. 799, 803-05 (B.I.A. 1999); *see also Sylvain v. Att'y Gen.*, 714 F.3d 150, 152 (3d Cir. 2013). The mandatory detention provision of § 1226(c) stands in contrast to the general rule that when the Government seeks to detain an alien pending his removal proceedings, he may seek a bond hearing to show that he should not be detained. *See* 8 U.S.C. § 1226(a); *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006); 8 C.F.R. § 1003.19(b). Each Appellant sought relief from his mandatory detention.

---

[1] The sole exception to mandatory detention lies where the Government believes release is necessary to protect a witness. *See* 8 U.S.C. § 1226(c)(2).

At issue on appeal are the District Court's rulings on Appellants' Third Amended Petition,[2] filed on August 5, 2013, and their third motion to certify a class, filed on May 12, 2014.[3]  The Third Amended Petition raised individual claims on behalf of Sukhu and two claims on behalf of a putative class of aliens who are being or will be mandatorily detained pursuant to § 1226(c).  The first such claim alleged violations of substantive and procedural due process.  Mandatory detention of aliens violates substantive due process, Appellants contended, when the alien has a "substantial challenge" to his removal—that is, when he challenges whether the crime for which he was convicted renders him removable or when he claims he is entitled to discretionary relief in the form of cancellation of removal or adjustment of status.

Appellants' procedural due process claim challenged the procedures surrounding so-called "*Joseph* hearings," the mechanism by which an alien who is mandatorily detained

---

[2]   The first petition for habeas corpus was filed by Gayle individually in May 2012 urging that he be given a bond hearing because ICE violated the dictates of § 1226(c) by not detaining him immediately after he was released from state custody.  In November 2012, a First Amended Petition was filed, including individual claims for relief for Sukhu, as well as claims brought on behalf of a putative class.  The Second Amended Petition, filed in May 2013, added claims for Francois.

[3]   As discussed in more detail below, the first motion to certify was filed in November 2012.  The second motion to certify was filed in February 2014.

pending his removal proceedings is provided "with the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention." *In re Joseph*, 22 I. & N. Dec. at 805. Specifically, Appellants asserted that an alien who is mandatorily detained pursuant to § 1226(c) is allowed to "seek[] a determination by an immigration judge that [he] is not properly included within" § 1226(c). 8 C.F.R. § 1003.19(h)(2)(ii); *see also In re Joseph*, 22 I. & N. Dec. at 800 (holding that an alien is entitled to a bond hearing if he can show at a *Joseph* hearing that the Government is "substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention"). Appellants alleged (1) that aliens do not receive adequate notice of their right to a hearing, (2) that *Joseph* hearing procedures impermissibly place the initial burden of proof on the alien, and (3) that a contemporaneous verbatim record should be made of each *Joseph* hearing.

In connection with their request for relief, Appellants also sought to certify a class "consisting of all individuals in New Jersey who are or will be detained pursuant to 8 U.S.C. § 1226(c)." First Mot. to Certify (D.Ct. Dkt. No. 13). Appellants relied on Federal Rule of Civil Procedure 23(b)(2), which allows plaintiffs to bring a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The District Court ruled on the merits of the claims brought on behalf of the class in two stages. In an order and opinion dated March 14, 2014 (*Gayle I*), the District Court partially granted the Government's motion to dismiss and

7

held that § 1226(c) did not violate substantive due process with respect to aliens who assert a substantial challenge to their removability. The District Court thus dismissed Appellants' petition "to the extent that [Appellants] are requesting that a *Joseph* hearing be provided to any mandatorily detained alien who has a 'substantial challenge' to his or her removal on grounds other than whether the alien falls within the § 1226(c) categories requiring mandatory detention." *Gayle v. Johnson*, 4 F. Supp. 3d 692, 721 (D.N.J. 2014).[4]

In an order dated January 28, 2015 (*Gayle II*), the District Court resolved the remaining claims—i.e., the adequacy of *Joseph* hearing procedures—on cross-motions for summary judgment, and also ruled on Appellants' motion to certify a class. As to the merits, the court held (1) that the form giving aliens notice of their right to seek a *Joseph* hearing ("Form I-286") does not provide constitutionally adequate notice and that the Government was required to revise the form; (2) that *Joseph* hearing procedures violate due process by not placing the initial burden on the Government, but that once the Government shows probable cause to believe that the alien is subject to mandatory detention, the burden shifts to the alien to show that the Government is "substantially unlikely to prevail" in proving the alleged charges; and (3) that due process does not require a contemporaneous recording of a *Joseph* hearing. *See Gayle v. Johnson*, 81 F. Supp. 3d 371 (D.N.J. 2015).

---

[4] Because Francois did not challenge whether he fell within a § 1226(c) category, the court then dismissed Francois for lack of standing. *Gayle I*, 4 F. Supp. 3d at 721.

8

The District Court judge then addressed the third motion to certify a class, having denied the first motion in May 2013 "without prejudice pending an expanded record and/or discovery," *Gayle v. Warden*, 3:12-cv-02806, ECF No. 50, at 2 (May 13, 2013), and having terminated the second motion in connection with her March 14, 2014 opinion by instructing Appellants to refile a motion "limited to those individuals who are entitled to a *Joseph* hearing consistent with this Opinion," *see Gayle I*, 4 F. Supp. 3d at 721-22. Appellants did so, redefining the class as "all individuals who are or will be detained within the State of New Jersey pursuant to . . . 8 U.S.C. § 1226(c), and who have a substantial challenge to 'threshold deportability' or 'inadmissibility' on one of the statutory grounds that trigger mandatory detention." Third Mot. to Certify (D.Ct. Dkt. No. 96). The District Court then denied the third motion to certify on the grounds that certification was "unnecessary" because its rulings on the merits of the claims meant that "all aliens who are subjected to mandatory detention would benefit from the injunctive relief and remedies that this Court has imposed." *Gayle II*, 81 F. Supp. 3d at 404. Appellants now appeal the January 28, 2015 order as to both the District Court's merits determination and its denial of class certification.[5]

---

[5] The Government cross-appealed the summary judgment order and sought an appellate determination of whether Form I-286 is constitutionally deficient but ultimately withdrew that appeal.

**II.**

The District Court had statutory jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241. We have statutory jurisdiction pursuant to 28 U.S.C. § 1291. "We review legal determinations *de novo,* factual findings for clear error, and matters committed to the District Court's discretion for abuse thereof." *United States v. Doe*, 810 F.3d 132, 142 (3d Cir. 2015).

**III.**

On appeal, Appellants, joined by numerous amici, challenge the merits of the District Court's substantive and procedural due process rulings, as well as its denial of their motion to certify a class, and the Government has responded point by point. Yet, as the parties conceded at oral argument in response to inquiry by the Court, Oral Arg. at 17:56, 38:01 (argued Feb. 10, 2016),[6] the District Court did not have authority to reach the merits. Nor do we. The District Court's judgment therefore must be vacated and the case remanded for consideration of the only issue over which it had jurisdiction: the motion for class certification.

We reach this conclusion for three reasons. First, because the claims of the individual class representatives were long ago moot and no mootness exception applies, the District Court exceeded its jurisdiction in reaching the merits. Second, under the well-recognized exception to mootness in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980), because the motion to certify a class was filed at a point in

---

[6] *Available at* http://www2.ca3.uscourts.gov/ oralargument/audio/15-1785Gaylev.WardenMonmouth.mp3.

time when at least one putative representative had a live claim, the District Court had jurisdiction to consider that motion even though the putative representatives' claims became moot.  Third, in denying the motion to certify a class, the District Court erred by disregarding the Rule 23 criteria and instead relying exclusively on the ground that a class action was "unnecessary" because it would serve no useful purpose given the District Court's merits rulings—rulings it had no jurisdiction to make.

## A.

We begin our case where we must begin every case: with the question of jurisdiction.  Article III of the Constitution gives federal courts jurisdiction only over "Cases" and "Controversies."  U.S. Const., art. III, § 2.  As a federal court, we must assure ourselves that we have Article III jurisdiction in every case that comes before us.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  A court has jurisdiction only if the claims before it are not moot.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42, 352 (2006).  The mootness doctrine imposes two requirements: (1) that the underlying dispute presents "live" issues, and (2) that the parties have "a legally cognizable interest in the outcome"—that is, a personal stake in the dispute.  *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)).  The parties must have a personal stake in the litigation not only at its inception, but throughout its existence.  *Id.* at 1023.  Therefore, "if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot."  *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993).

11

Here, we conclude that the District Court lacked jurisdiction—at least to reach the merits—as Appellants' individual claims were moot long before it issued the relevant orders. Each Appellant sought a bond hearing in an effort to obtain release from custody. But Gayle was granted habeas relief and released on bond in March 2013. *See Gayle v. Napolitano*, No. 3:12-cv-02806, 2013 WL 1090993 (D.N.J. Mar. 15, 2013). Sukhu was released on May 8, 2013, after the immigration judge granted his application for adjustment of status. And Francois was released on bond on August 30, 2013, after the District Court ordered that he be given a bond hearing pursuant to *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011). *See Francois v. Napolitano*, No. 3:12-cv-02806, 2013 WL 4510004 (D.N.J. Aug. 23, 2013). His removal was terminated on September 26, 2013, and the deadline for the Government to appeal that determination expired on October 28, 2013, *see* 8 C.F.R. 1003.38(b) and from that point, there was no effective relief the District Court could provide. In short, Appellants' individual claims for relief have been moot for nearly three years.[7]

---

[7] Ironically, as early as May 2013, Appellants' counsel alerted the District Court to the problem of mootness for named representatives Gayle and Sukhu and advised the District Court "[w]e may have others the next time we come back." May 10, 2013 Hr'g Tr. at 45 (D.Ct. Dkt. No. 54). But no others were added to cure mootness, and it appears that, after the District Court dismissed Gayle's and Sukhu's claims as moot on May 13, 2013, neither the parties nor the District Court concerned themselves again with the issue of the Court's jurisdiction.

12

Although not urged by the parties, we have considered whether the exception to mootness for disputes "'capable of repetition' while 'evading review'" might apply to salvage Appellants' individual claims. *See Turner v. Rogers*, 564 U.S. 431, 439 (2011) (quoting *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)). That exception applies "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again," *id.* at 439-40 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). We have held that detention pursuant to § 1226(c) may "evade review" where it is temporary and "the underlying removal proceedings justifying detention may very well be nearing a resolution by the time a federal court of appeals is prepared to consider them," *Diop*, 656 F.3d at 227 and it is capable of repetition when an alien has been mandatorily detained based on a prior conviction but also has *another* prior conviction that would justify mandatory detention, *id.* at 228; *see also United States ex rel. Forman v. McCall*, 709 F.2d 852, 855 n.9 (3d Cir. 1983) (finding an inmate's challenge to parole procedures not moot even after he was paroled because the parole commission reserved the right to void his parole if the district court's order granting relief was reversed or vacated).

None of those circumstances pertain here. Sukhu's application for status adjustment was granted and his removal proceedings were terminated on April 30, 2013, while Francois's removal was cancelled on September 26, 2013. Thus, unless they commit qualifying crimes in the future, these named representatives have no reasonable prospect of being subjected to removal proceedings, much less mandatory

13

detention pursuant to § 1226(c). Gayle's case presents a closer question as his removal proceedings were still ongoing at the time the District Court rendered its merits decisions, so there was at least a theoretical possibility that he could have been detained again if he had another prior conviction that triggered mandatory detention. *See Diop*, 656 F.3d at 228. As the parties concede, however, he did not.[8]

---

[8] In addition to Gayle's 2007 drug conviction, which served as the basis for his mandatory detention, he was arrested for marijuana possession in 2008 and 2011, which resulted in convictions for disorderly conduct under New York Penal Law § 240.20. But disorderly conduct in New York is not an aggravated felony, *see* 8 U.S.C. §§ 1101(a)(43), 1227(a)(2)(A)(iii); N.Y. Penal Law §§ 70.15(4), 240.20 (stating that disorderly conduct is a "violation" punishable by no more than 15 days' incarceration), or a drug offense, *see* 8 U.S.C. § 1227(a)(2)(B)(i); *In re Zamora*, 2008 WL 655924, at *1 (B.I.A. Feb. 14, 2008) (unpublished); *cf. In re Gomez-Rivas*, 2011 WL 4730892 (B.I.A. Sept. 27, 2011) (unpublished). Nor are these convictions for disorderly conduct generally considered crimes involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i), (ii); *Application for Waiver of Grounds of Inadmissibility*, 2010 WL 4686668, at *2 (DHS Apr. 16, 2010); *Pet. for Immigrant Abused Spouse*, 2013 WL 5504790, at *5 & n.2 (DHS Feb. 14, 2013). Gayle's 1995 controlled substances conviction also could not subject him to mandatory detention under § 1226(c) because the statute applies only to aliens released from physical custody after the statute's effective date, *see Saysana v. Gillen*, 590 F.3d 7, 10 & n.2, 15 n.5, 16-17 & n.6 (1st Cir. 2009); *In re West*, 22 I. &

In sum, Appellants had received the very relief they sought and presented no live individual claim to the District Court well before that court issued its opinion and order of March 14, 2014, partially granting the Government's motion to dismiss and ruling on the merits of Appellants' substantive due process claim, or its opinion and summary judgment order of January 28, 2015, ruling on the merits of the remaining claims, granting partial relief, and denying class certification on the ground that the relief it granted rendered certification unnecessary. Accordingly, the District Court

---

N. Dec. 1405, 1410 (B.I.A. 2000); *see also Lora v. Shanahan*, 804 F.3d 601, 609-10 (2d Cir. 2015), and Gayle was paroled before the statute went into effect in 1998.

At oral argument, Gayle's counsel informed us that he is facing new criminal charges for petty larceny but that these charges "will in all likelihood be dismissed." Oral Arg. at 3:08. In any event, a later conviction subjecting Gayle to mandatory detention does not "unmoot" the case and retroactively confer jurisdiction. Similarly, the possibility that Gayle might commit crimes in the future does not keep his claim alive absent some indication that Gayle is unable to follow the law. *See, e.g.*, *Turner*, 544 U.S. at 440 (holding that a petitioner's suit challenging his previous incarceration for failing to pay child support was not moot because there was "a more than 'reasonable' likelihood that Turner will again be 'subjected to the same action'" in light of numerous failures to pay).

lacked jurisdiction to enter those orders and they must be vacated.[9]

**B.**

Had this case involved only Appellants' individual claims, federal jurisdiction would be absent, as in the District Court, and this case would be at an end. But class claims can breathe life into an otherwise moot case for they "allow a plaintiff to continue seeking class certification in certain circumstances even though his individual claim for relief has become moot." *Richardson v. Bledsoe*, --F.3d--, 2016 WL 3854216, at *3 (3d Cir. July 15, 2016). As relevant here, so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000); *see also Geraghty*, 445 U.S. at 397.[10]

---

[9] The relief ordered by the District Court appears to have exceeded its jurisdiction in yet another respect: Federal courts, other than the Supreme Court, are deprived of jurisdiction "to enjoin or restrain the operation of [§ 1226(c)] other than with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1); *see also Alli v. Decker*, 650 F.3d 1007, 1016 (3d Cir. 2011) (holding that § 1252(f)(1) permits classwide *declaratory* relief). Thus, despite its conclusion to the contrary, *see Gayle I*, 4 F. Supp. 3d at 721, it seems the scope of the *injunction* entered by the District Court also exceeded its authority.

[10] We are bound by our longstanding precedent interpreting *Geraghty* to mean that a district court retains

16

This is because a plaintiff's claim that he should represent the class is one that is "presented . . . in a concrete factual setting and [with] self-interested parties vigorously advocating opposing positions," and such a claim "remains as a concrete, sharply presented issue" even if the plaintiff's individual claims expire. *Geraghty*, 445 U.S. at 403-04. For the same reason, the named plaintiff may appeal the *denial* of a motion to certify the class, *id.* at 404, as long as he "had a live claim when he filed for class certification" and "appellate review may reverse an erroneous denial of class certification that, 'if

jurisdiction to decide a motion to certify as long as the individual plaintiff had a live claim at the time it was filed. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 n.19 (3d Cir. 1992); *Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987). As we have previously observed, some Courts of Appeals hold that a plaintiff's individual claims must remain live at the time the motion to certify a class is *decided*, not merely *filed*, relying on *Geraghty*'s dictum that "[i]f the named plaintiff has no personal stake in the outcome at the time class certification is denied, relation back of appellate reversal of that denial still would not prevent mootness of the action," *Geraghty*, 445 U.S. at 404 n.11. *See, e.g.*, *Lusardi*, 975 F.2d at 977 n.19 (collecting cases). But unless and until the Supreme Court has clearly taken a contrary view or we revisit our own precedent en banc, we will continue to adhere to the rule of *Wilkerson* and *Lusardi*. *See In re Carco Elecs.*, 536 F.3d 211, 214 (3d Cir. 2008) (noting "strong statements" in Supreme Court opinions suggesting that a prior Third Circuit decision was "flawed" but stating that overruling that decision "must be left to the wise counsel of the Court *en banc*").

17

correctly decided, would have prevented the action from becoming moot,'" *Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (3d Cir. 1992) (quoting *Geraghty*, 445 U.S. at 404 n.11), because "the corrected ruling 'relates back' to the date of the original denial," *Geraghty*, 445 U.S. at 404 n.11.[11] Thus, the critical question is whether a plaintiff had a live claim at the time the operative motion to certify was filed.

In this case, the answer to that question is not as simple as it might seem because Appellants technically filed three different motions to certify. While at least one Appellant had standing at the time the first was filed in November 2012, each Appellant's claims had become moot before the filing of the second motion to certify, much less the third motion, which is the one the District Court decided on January 28, 2015 and the subject of this appeal. Thus, this case requires us to decide how *Geraghty*'s class mootness rule should apply to sequentially filed motions for class certification.

We considered this issue once before in *Lusardi*. There, the district court had conditionally certified a class under the Age Discrimination and Employment Act but later decertified it on the ground that the members of the proposed class were not similarly situated; the plaintiffs' individual

---

[11] As we recently observed, a plaintiff also may continue to seek certification if his claims became moot after he filed a class complaint but *before* he filed for class certification where the defendant "picked off" the plaintiff by mooting his individual claim before he had a fair opportunity to seek certification. *See Richardson*, 2016 WL 3854216, at *10. That is not the situation here.

claims then became moot, and after the case was reassigned to another judge, plaintiffs sought a *de novo* hearing on class certification to recertify the class or to certify four subclasses. 975 F.2d at 967-69. The district judge agreed with defendants that "the dismissal of plaintiffs' individual claims deprived the district court of jurisdiction to address the merits of class recertification," *id.* at 969, and we affirmed, rejecting plaintiffs' argument that their *de novo* certification motion "'relates back' to and would correct [the original judge's] assertedly erroneous class decertification, decided when they still had live claims," *id.* at 978.

The Government argues that *Lusardi* compels the same result in this case—that is, that Appellants' third motion to certify was a *de novo* motion filed after Appellants' individual claims expired and was therefore unreviewable by the District Court. *See* Gov't's Ltr. Br. 5. Appellants, on the other hand, urge that *Lusardi* is inapposite because neither Appellants' first nor second motions for class certification were resolved based on an analysis of the Rule 23 factors; the District Court simply deferred that analysis until the third motion, so that all three should be considered one "continuously pending" motion. *See* Appellants' Ltr. Br. 7.

Appellants have the better of the argument. We acknowledged in *Lusardi* that so long as the named representative has a live claim at the time the motion is filed, *Geraghty*'s relation-back doctrine applies and the representative's "private dispute, although mooted, essentially carrie[s] forward for the limited purpose of arguing a reviewable motion *through to completion*." *Lusardi,* 975 F.2d at 976 (emphasis added). The plaintiffs in that case, however, had seen their original motion to completion when the class was decertified for failure to comply with the

19

certification requirements; those plaintiffs were now seeking to have the reassigned judge "decide the question entirely anew" in "a *de novo* hearing [that] would require the creation of an entirely new record and adjudication of complicated class considerations . . . at a time when the interests of putative class representatives may no longer be squarely adverse to defendant or wholly in line with absent 'class' members." *Id.* at 981.[12]  That, we concluded, would stretch *Geraghty*'s relation-back doctrine beyond the breaking point "[b]ecause a determination on the merits of the [class certification] motion 'could not relate back into a void.'" *Id.* at 978 (quoting *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987)).

There was no such void here, however, in Appellants' efforts to litigate their original motion to completion or, hence, in the District Court's jurisdiction.  The first motion to certify was not denied for failure to satisfy Rule 23 criteria. Instead, it was denied solely so that further discovery could be completed "without prejudice pending an expanded record and/or discovery."  *Gayle*, 3:12-cv-02806, ECF No. 50, at 2. Likewise, the District Court terminated the second motion, not as a final adjudication of certification, but with express instruction that Appellants refile a motion to certify a class "limited to those individuals who are entitled to a *Joseph*

---

[12] Crucially, the plaintiffs in *Lusardi* failed to properly appeal the decertification order that extinguished their class claims by omitting it from their notice of appeal.  As a result, we could not review the initial certification decision.  *See Lusardi*, 975 F.2d at 970-73.  No such defect prevents our review of the class certification denial in the instant case.

20

hearing consistent" the court's elimination of certain claims in *Gayle I*. *Gayle I*, 4 F. Supp. 3d at 721-22. Thus, the successive motions were substantially similar and required no additional discovery, and until the District Court ruled on the third motion, there was no denial of class certification based on a Rule 23 analysis or other intervening event that could be deemed to break the jurisdictional chain.

Our holding today—that *Geraghty*'s relation-back doctrine encompasses successive, substantially similar motions to certify unless and until certification has been finally resolved on Rule 23 grounds—comports with the logic of *Geraghty* and the practicalities of litigation.[13] A plaintiff who files a motion to certify a class prior to the expiration of his individual claims does not lose his "interest in accurate resolution of his legitimate efforts to serve as class representative," *Lusardi*, 975 F.2d at 976, merely because the District Court, as a technical matter, denies or terminates the motion without actually deciding it. Rather, his stake "carrie[s] forward for the limited purpose of arguing a reviewable motion through to completion," *id.*, and the

---

[13] We need not decide whether a different result would be warranted where plaintiff's successive motion was so substantially different that it "would require the creation of an entirely new record and adjudication of complicated class considerations . . . at a time when the interests of the putative class representatives may no longer be squarely adverse to defendant or wholly in line with absent 'class' members." *Lusardi*, at 981. Here, the first and second motions to certify were essentially the same, while the third simply narrowed the class consistent with *Gayle I*.

certification question remains concrete and fit for judicial resolution, *see Geraghty*, 445 U.S. at 402-04.

Moreover, as the drafters of Rule 23 recognize, "there are 'many valid reasons that may justify deferring the initial certification decision'" to a later period in the litigation. *Richardson*, 2016 WL 3854216, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to the 2003 amendment). Yet district judges must also manage busy dockets, and one who intends to defer ruling, for example, pending additional discovery relevant to Rule 23 criteria, might reasonably decide to deny such a motion without prejudice rather than hold it in abeyance for months on end. *See, e.g.*, 28 U.S.C. § 476 (requiring semiannual public disclosure of the number of motions that have been pending on each district judge's docket for more than six months). To hold that a plaintiff's certification claim is extinguished by such a denial would enfeeble the "flexible character" of the mootness doctrine, *Geraghty*, 445 U.S. at 400, and unmoor it from the realities of litigation.

Indeed, consider the implications of applying *Lusardi* to the facts of this case. If the District Court had jurisdiction only over the first motion to certify, our appellate jurisdiction would extend only to its order on that motion—an order denying the motion without prejudice to additional discovery. Yet that order is unreviewable: It is not a final order within the meaning of 28 U.S.C. § 1291, *see Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir. 2009) ("[A]n order dismissing a complaint without prejudice is normally not final within the meaning of [28 U.S.C.] § 1291."), nor is it subject to interlocutory appeal under Rule 23(f), *see In re Nat'l Football League Players Concussion Litig.*, 775 F.3d 570, 584 (3d Cir. 2014) (stating that an order "conditionally" certifying a class

under Rule 23(e) "but reserv[ing] the class certification determination for a later time," and similar "order[s] issued under some other subdivision of Rule 23" are not subject to interlocutory review under Rule 23(f)). That would mean the district court's denial without prejudice—now unchallangeable in the district court and unreviewable on appeal—would preclude the plaintiff from obtaining a review of his right to represent a class. *Geraghty* dictates otherwise. 445 U.S. at 401-04 (explaining that a plaintiff retains the "right" to seek to represent a class even after his personal claim has become moot).

In short, the District Court had jurisdiction to decide Appellants' third motion to certify, and we now turn to the question of whether its denial of that motion was proper.

## C.

The sole ground for the District Court's denial of class certification in this case was that it "d[id] not find certification of a class necessary." *Gayle II*, 81 F. Supp. 3d at 403. As explained below, that was error, for "necessity" is not an express requirement of Rule 23, and the criteria the District Court was required to consider are wholly absent from its discussion.

To maintain a class action under Federal Rule of Civil Procedure 23, a plaintiff must first show that "the class is so numerous that joinder of all members is impracticable" (numerosity); that "there are questions of law or fact common to the class" (commonality); that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and that "the representative parties will fairly and adequately protect the interests of the class"

23

(adequacy). *See* Fed. R. Civ. P. 23(a). Second, the plaintiff must show that the class action falls within one of the three types enumerated in Rule 23(b)—in this case, Rule 23(b)(2), which provides that "[a] class action may be maintained" if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 & n.5 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

Here, the District Court denied class certification as not "necessary" because a Rule 23(b)(2) class is limited to injunctive and declaratory relief and the court's declaration as to the unconstitutionality of the government's procedures and its grant of injunctive relief on an individual basis "would be binding on all of the governmental agencies and would indeed inure to the benefit of all members of the proposed class." *See Gayle II*, 81 F. Supp. 3d at 403. In assuming a "necessity" requirement, the District Court relied on *Ihrke v. N. States Power Co.*, 459 F.2d 566 (8th Cir.), *vacated on other grounds sub nom.*, *N. States Power Co. v. Ihrke*, 409 U.S. 815 (1972), in which the Eighth Circuit held a court may deny certification of a 23(b)(2) class where "[t]he determination of the constitutional question can be made by the Court . . . regardless of whether [the] action is treated as an individual action or a class action. No useful purpose would be served by permitting [such a] case to proceed as a class action." *Id.* at 572.

24

The role of "necessity" in our own Circuit, however, has been an open question. Although the Government asserts that we adopted a freestanding necessity requirement in *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir. 1973), our opinion in that case and subsequent cases make clear we did no such thing. True, in *Carter*, we affirmed the district court's denial of certification as "within the range of discretion permitted by Rule 23" when one of the rationales offered by the district court was that "the precedential value of its decision would render a judgment in favor of the class unnecessary," but the district court also had found a traditional Rule 23 factor, commonality, to be lacking. *Id.* Moreover, just a few years after *Carter*, we explicitly stated that a plaintiff seeking Rule 23 certification "need not . . . prove[] that certification [is] 'necessary,' but only that there was compliance with the prerequisites of Rule 23." *Geraghty v. U.S. Parole Comm'n*, 579 F.2d 238, 252 (3d Cir. 1978), *vacated on other grounds sub nom.*, *Geraghty*, 445 U.S. 388 (1980).

Before answering this question, we consider the views of our sister Circuits—views that turn out to be wide-ranging. The Seventh Circuit has expressly rejected the contention that a district court can deny certification as unnecessary, *see, e.g.*, *Brown v. Scott*, 602 F.2d 791, 795 (7th Cir. 1979), while other Circuits have affirmed the denial of class certification on that ground, at least in the Rule 23(b)(2) context, *see, e.g.*, *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973); *Sandford v. R. L. Coleman Realty Co.*, 573 F.2d 173, 178-79 (4th Cir. 1978); *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976); *James v. Ball*, 613 F.2d 180, 186 (9th Cir. 1979), *reversed on other grounds*, *Ball v. James*, 451 U.S.

25

355 (1981); *Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994).

The First Circuit has staked out a middle ground, observing in light of Rule 23(b)(2)'s express requirement "that final injunctive relief or corresponding declaratory relief [be] *appropriate* respecting the class as a whole," Fed. R. Civ. P. 23(b)(2) (emphasis added), that certification under Rule 23(b)(2) may be denied where classwide relief is unnecessary because such relief is then a "formality or otherwise inappropriate." *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985). At the same time, the court recognized that "[t]here may . . . be situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of certification improper," such as the risk of mootness, the possibility of a defendant's non-acquiescence in the court's decision, or where class certification would not burden the court. *Id.* at 1356. We find the First Circuit's approach persuasive.

Accordingly, we hold today that necessity is not a freestanding requirement justifying the denial of class certification.[14] However, it may be considered to the extent it

---

[14] Indeed, requiring "necessity" over and above Rule 23's enumerated criteria would create conflict with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)—in which the Supreme Court emphasized the primacy of Rule 23's enumerated criteria, explaining that the Rule admonishes that "if [Rule 23's] prescribed preconditions are satisfied '[a] class action *may be maintained*' (emphasis added)—not '*a class action may be permitted*.' . . . The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff," *id.* at 399-40 —and *Geraghty* itself—in

26

is relevant to the enumerated Rule 23 criteria, including "that final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That is, there may be circumstances where class certification is not appropriate because in view of the declaratory or injunctive relief ordered on an individual basis, there would be no meaningful additional benefit to prospective class members in ordering classwide relief. *See, e.g.*, *Galvan*, 490 F.2d at 1261-62 (affirming a district court's denial of class certification because the defendant "has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy").

The circumstances in which classwide relief offers no further benefit, however, will be rare, and courts should

which the Court stated that "[Rule 23] give[s] the proposed class representative the right to have a class certified if the requirements of the Rule[] are met," 445 U.S. at 403. In addition, to the extent necessity would require a showing that a class action was "superior to other available methods for fairly and efficiently adjudicating the controversy," as required under Fed. R. Civ. P. 23(b)(3), such a requirement would be in tension with the absence of a "superiority" requirement in Rule 23(b)(2), *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63 (2011) (observing that a putative class representative need not show that a Rule 23(b)(2) "class action is a superior method of adjudicating the dispute" because in 23(b)(2) cases, "superiority [is] self-evident").

27

exercise great caution before denying class certification on that basis. After all, the imposition of individual relief is no guarantee it will be carried over to other class members. *See Gurmankin v. Costanzo*, 626 F.2d 1132, 1136-37 (3d Cir. 1980) (recognizing in a different context that *stare decisis* alone will not always cause a defendant to abide by a holding with respect to similarly situated individuals and that, in such circumstances, a district court might need to grant more "effective remedial relief"). Indeed, as the Government cautioned in its briefing on appeal, "as a matter of practice, the Department of Justice may choose to acquiesce in a particular district court decision, but such acquiescence is not as a matter of law," Gov't's Ltr.. Br. at 1, and that is borne out in practice. For example, even when a Court of Appeals has struck down a law or regulation, the Government has sometimes ceased enforcement only in that circuit and otherwise continued to apply it nationwide. *E.g.*, *Cen v. Att'y Gen.*, --F.3d--, 2016 WL 3166013, at *5 (3d Cir. June 6, 2016).

Where class certification is denied on the ground of necessity, yet would-be class members continue to be subjected to injury, their only option may be to undertake the expense, burden, and risk of instituting their own litigation—barriers that in many cases will be prohibitive. The consequences can be significant for those who would otherwise benefit from the relief afforded by Rule 23(b)(2), a rule "designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 59 (3d Cir. 1994) (quoting 1 Newberg & Conte, *Newberg on Class Actions* § 4.11, at 4-39 (1992)); *see also* Fed. R. Civ. P. 23 advisory

28

committee's note (1966) (explaining that "[i]llustrative" of Rule 23(b)(2) class actions "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration"). A failure to exercise careful scrutiny before denying certification as unnecessary risks "plac[ing] the defendant in the driver's seat," and allowing the defendant to, in essence, unilaterally prevent classwide relief. *Cf. Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (rejecting a defendant's "gambit" to moot a Rule 23(b)(3) class action by offering a settlement that the named plaintiffs did not accept).[15]

---

[15] Moreover, absent the attorneys' fees provided by class treatment, attorneys may well be less willing to seek individual relief on plaintiffs' behalf. After all, the class action device is designed in part to spur attorneys "who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost. The prospect of [class action] fee arrangements offers advantages for litigation by named plaintiffs . . . as well as for their attorneys." *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . . A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

With these concerns in mind, courts must engage in a "rigorous analysis" of the appropriateness of 23(b)(2) relief, as well as the other Rule 23 criteria, before denying class certification. *See Falcon*, 457 U.S. at 160-61; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). As our sister Circuits have recognized, a court must do more than assume or hypothesize that a ruling on the claims of an individual plaintiff will accrue to the benefit of the class. *See*, *e.g. Galvan*, 490 F.2d at 1261-62; *Kan. Health Care Ass'n.*, 31 F.3d at 1548 (affirming the district court's denial of certification in a challenge to a state's Medicare reimbursement plan as unnecessary because the district court found that "we have no reason to doubt that defendants would apply any changes made to the reimbursement formula uniformly to nursing homes in Kansas").

Rather, courts should scrutinize with care the representation that classwide relief is not necessary and consider, among other things: (1) the nature of the claims and of the parties; (2) the relief available to an individual plaintiff and the extent to which that relief would benefit putative class members;[16] (3) the strength of the evidence that a defendant will abide by a court's ruling on an individual plaintiff's claim with respect to others who are similarly situated; (4) the

---

[16] *Compare Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985) (holding that the district court lacked the authority to enjoin a federal agency's treatment of anyone other than the individual plaintiffs in that case), *with Gurmankin*, 626 F.2d at 1136 (accepting a defendant's concession that, even where a class has not been certified, "the district court has the ability to render relief which is operative beyond the named plaintiff").

ease with which putative class members would be able to vindicate their rights following a defendant's noncompliance; and (5) whether there are other circumstances, such as impending mootness of the individual claims, that nonetheless render classwide relief "appropriate", Fed. R. Civ. P. 23(b)(2).[17]   To facilitate appellate review, courts

---

[17] Of course, if a putative class action does not meet the requirements of Rule 23, then a class may not be certified, regardless of any implications for mootness. *Cf. Geraghty*, 579 F.2d at 252 ("[A] possibility of avoiding mootness on appeal would not, of itself, be a sufficient basis for conferring class action status on a suit otherwise barred by Rule 23."). However, if the prerequisites of Rule 23 are otherwise met, the impending mootness of individual claims counsels in favor of certification regardless of whether individual relief would theoretically render classwide relief unnecessary. For in that situation, class certification may be the *only* way to provide relief. *See Winston by Winston v. Children and Youth Servs. of Del. Cnty.*, 948 F.2d 1380, 1384 n.2 (3d Cir. 1991) (suggesting that a district court should certify a class where it would prevent a case from becoming moot); *see also Gratz v. Bollinger*, 539 U.S. 244, 268 (2003) (stating that "class-action treatment was particularly important in this case because" the individual claims might have become moot); *Dionne*, 757 F.2d at 1344 ("There may . . . be situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of a certification improper," such as the risk of mootness.); *Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir. Unit A Oct. 1981) (stating that "[c]ertification of a class under Rule 23(b)(2) is 'especially appropriate where, as here, the claims of the members of the class may

should make explicit findings before denying class certification on the ground that classwide relief is not appropriate.

Here, without the benefit of the guidance we have provided today, the District Court denied class certification on the ground that "no useful purpose would be served by certifying a class because all aliens who are subjected to mandatory detention would benefit from the injunctive relief and remedies that this court has imposed." *Gayle II*, 81 F. Supp. 3d at 404. Because the District Court did not have jurisdiction to enter the relief on which it predicated its ruling and because it did not engage in the "rigorous analysis" of Rule 23 criteria that we have required, we will remand for the District Court to reconsider Appellants' motion to certify[18] and to conduct that analysis in the first instance.[19]

---

become moot as the case progresses'" and holding, therefore, that the district court "abused its discretion in refusing to certify an otherwise appropriate class because of 'lack of need'" (quoting *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979))); *Finberg v. Sullivan*, 634 F.2d 50, 64 (3d Cir. 1980) (stating that Rule 23(b)(2) serves the important purpose of "ensur[ing] that the claims of unnamed plaintiffs will receive full appellate review" should the named plaintiffs' claims become moot).

[18] On remand, the Appellants are not confined to arguing their third motion to certify, which was filed in response to merits rulings the District Court had no jurisdiction to make. Instead, the Appellants may opt to proceed with their second motion to certify or to file an amended motion.

**IV.**

For the foregoing reasons, we will vacate the District Court's judgment and its orders of March 14, 2014 and January 28, 2015, and will remand for further proceedings consistent with this opinion.

---

[19] Our holding that the District Court must address class certification as a threshold issue in the context of this case does not mean, of course, that a district court must decide the certification question before deciding other issues where mootness does not require it. Indeed, the advisory committee's note to the 2003 amendments to Rule 23 make explicit that various "considerations may affect the timing of" and "may justify deferring" the certification decision, including a defendant's motion for dismissal or summary judgment or the need to explore the designation of class counsel—although "active management may be necessary to ensure that the certification decision is not unjustifiably delayed." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment).