**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3484
_____

BETHANY LASPINA,
                    Appellant

v.

SEIU PENNSYLVANIA STATE COUNCIL; SEIU LOCAL
668; SEIU HEALTHCARE PA; SEIU LOCAL 32BJ; PENN-
SYLVANIA JOINT BOARD OF WORKERS UNITED;
LACKAWANNA COUNTY PUBLIC LIBRARY SYSTEM;
SCRANTON PUBLIC LIBRARY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:18-cv-02018)
District Judge: Honorable Malachy E. Mannion
_____

Argued September 21, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: January 15, 2021)
_____

Shannon Conway
Talcott J. Franklin
Talcott Franklin PC
1920 McKinney Avenue, 7th Floor
Dallas, TX 75201

Jonathan F. Mitchell          [ARGUED]
Mitchell Law PLLC

111 Congress Avenue, Suite 400
Austin, Texas 78701

Edmond R. Shinn
Law Offices of Edmond R. Shinn
7032 Lafayette Avenue
Fort Washington, PA 19034

Walter S. Zimolong III
Zimolong LLC
P.O. Box 552
Villanova, PA 19085

      *Counsel for Appellant*

Lauren M. Hoye
Willig Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Scott A. Kronland       [ARGUED]
P. Casey Pitts
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108

      *Counsel for Appellee SEIU Local 668*

J. Timothy Hinton, Jr.
Haggerty Hinton & Cosgrove LLP
1401 Monroe Avenue, Suite 2
Dunmore, PA 18509

      *Counsel for Appellee Scranton Public Library*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*.

When Bethany LaSpina began working for the Scranton Public Library, all Library employees were exclusively represented in collective bargaining by Local 668 of the Service Employees International Union. But no employee had to join the Union. An employee could join (and pay full membership dues) or decline to join (and pay a lesser nonmember "fair-share fee"), at the employee's discretion. LaSpina joined the Union.

Then came *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). In *Janus*, the Supreme Court held that compelling nonmembers to pay fair-share fees violates their First Amendment associational rights. *Id.* at 2486. In the wake of *Janus*, LaSpina resigned from the Union and sued, seeking various monetary, injunctive, and declaratory relief, including a refund of the portion of the dues she paid the Union equal to the nonmembers' fair-share fees, as well as a refund of membership dues deducted from her paycheck after she resigned.

In a thorough and well-reasoned opinion, the District Court concluded that each of LaSpina's claims failed to present a justiciable case or controversy as required by Article III. We will affirm.

LaSpina had no standing to seek a refund of any portion of the Union dues she made prior to *Janus* because she cannot tie the payment of those dues to the Union's unconstitutional deduction of fair-share fees from nonmembers. In addition, if LaSpina is due a refund of certain monies that were deducted from her wages after she resigned, the claim is not a federal one; rather, it is, if anything, a state court claim for conversion or trespass to chattels. Finally, LaSpina's claim that the Union may not collect any dues from an employee until that employee knowingly and freely waives their constitutional right to resign from Union membership and withhold payments to the Union is moot as LaSpina no longer is a Union member.

# I. BACKGROUND

## A. The structure of agency shops

The labor laws in the United States had long permitted public employers and unions to establish "agency shops." In an agency shop, "one union is allowed to exclusively represent an entity's employees on the condition that the union represent *all* the entity's employees," even those who decline to join. *See Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 265-66 (3d Cir. 2020).

The option for public employees to decline to join a union introduced the issue of "free riders." Employees could decline to join the union (and therefore avoid paying union dues) while still accruing the benefits of representation (say, increased bargaining power in salary negotiations). To address that problem, Congress and various state legislatures allowed unions and employers who established an agency shop to bargain for an "agency fee" provision in their collective-bargaining agreements. If a collective-bargaining agreement contained an agency fee provision, employees who declined to join the union nevertheless were required to pay the union a fee.

A Pennsylvania law had authorized this practice as a "fair share fee." 71 Pa. Stat. and Cons. Stat. § 575(b). Pursuant to that practice, employees who declined to join the union did not need to pay full union membership dues, only some lesser amount equal to what the union spent on collective-bargaining activities. *Id.* § 575(a). The fair-share fee could not cover the union's lobbying or other political activity.

For over forty years, public-sector agency shops and attendant fair-share fees were authorized by the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). In *Abood*, the Supreme Court agreed that First Amendment associational freedoms "protected [nonmembers] from having to subsidize the union's political activities 'unrelated to its duties as exclusive bargaining representative.'" *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 304 (3d Cir. 2020)

4

(quoting *Abood*, 431 U.S. at 234). It held, however, that a balance of interests permitted state governments to require nonmembers to pay a fee equal to union activities that were "germane to [the union's] duties as collective-bargaining representative." *Abood*, 431 U.S. at 235.

In *Janus*, the Supreme Court "overruled" *Abood* and held that governments forcing nonmembers to pay fair-share fees violates the nonmembers' freedom of association, even if the fees went to collective bargaining activities alone. 138 S. Ct. at 2486. Specifically, the Court held that the "procedure" by which "[s]tates and public-sector unions . . . extract agency fees from nonconsenting employees . . . violates the First Amendment." *Id.* Accordingly, "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id.*

A previous panel of this Court declined to comment on the constitutionality of Pennsylvania's agency fee statute on justiciability grounds. *See Hartnett*, 963 F.3d at 308-09. A later panel, however, concluded that under *Janus*, "Pennsylvania's public sector agency shop law was no longer constitutional." *Diamond*, 972 F.3d at 268.

## B. LaSpina begins employment at the Lackawanna County Library System, and joins Local 668

LaSpina began working for the Lackawanna County Library System in 2015, has been employed by it since, and currently works at the Scranton Public Library. When LaSpina began at the Scranton Public Library, it was an agency shop, exclusively represented in collective bargaining by SEIU Local 668. Because the Library was an agency shop, LaSpina was permitted either to join the Union (and pay full membership dues) or to decline to join (and pay a lesser fair-share fee). LaSpina joined the Union.

According to LaSpina, however, her decision to join the Union as a member was involuntary. LaSpina pleads in her

complaint that her decision to join was "caused by a union and employer that induced her to believe that she had no choice but to join as a condition of her employment." App. 89. Had LaSpina known that she had a right to refuse membership, she says, she "would never have joined." App. 88.

To support her claim that her decision to join the Union was induced, LaSpina pleads, first, that she "enrolled and remained in the union because she was instructed to fill out a union-membership form at her job orientation, and she was never informed nor made aware of her right to refuse union membership and pay a reduced amount in fair share fees." App. 88 (internal quotation marks omitted). Second, LaSpina identifies a November 2016 email exchange she had with the Library's human resources officer. In the opening email, LaSpina told the human resources officer that she had "some questions regarding the union and pension part of my pay stub." App. 109. LaSpina's questions (and a comment that can be rephrased as a question) were these:

- "Is it necessary to be part of the union to qualify for the pension?"

- "What exactly are the pros and cons of union membership?"

- "[W]ould [it] be possible to retain the pension without the union membership in order to have more money in my paycheck[?]"

App. 109. The officer replied, as shown below, as follows: "The union dues are mandatory by law." App. 89, 109.

**Sent:** Monday, November 14, 2016 8:36 AM
**To:** Bethany LaSpina
**Subject:** RE: pension and union

The library's full-time positions (other than management) all are union positions. Having a union can be beneficial to employees since it gives them representation in negotiating salaries and benefits with management. The union dues are mandatory by law. The pension is with the City of Scranton Non-uniformed Pension. It allows for a pension after fifteen years of service and attaining the age of 55. Again this is a mandatory deduction.

6

## C. LaSpina resigns from Local 668 after the Supreme Court issues *Janus*

After the Supreme Court decided *Janus*, the Union abandoned its agency-fee setup. The day the Court issued its decision, Steve Catanese, president of SEIU Local 668, wrote to Jack Finnerty of the Scranton Public Library "that the Supreme Court has ruled in *Janus*" and has "held public-sector employers may no longer deduct agency fees from non-consenting employees." Supp. App. 69. Catanese's letter instructed Finnerty to, "**effective immediately**, please discontinue fair-share fee deductions." *Id.* (emphasis in original). Catanese also wrote that *Janus* concerned the First Amendment rights of nonmembers, and so "[t]he Court's decision has no effect on union membership dues nor our bargained-for provisions of remitting dues to the Union." *Id.*

Following that instruction, the Library stopped deducting fair-share fees from nonmember employees and has not deducted any such fees since. App. 9. Now, pursuant to *Janus* and with direction from Union leadership, public employees represented by the Union can either join the Union and pay membership dues or decline to join and pay nothing, and the employer is obliged to honor the employee's request either way.

Two months after *Janus*, LaSpina resigned from the Union. On August 20, 2018, LaSpina mailed a letter to SEIU Local 668 and to her employer's human resources department that stated: "I am immediately terminating my membership in the union and all its affiliates and revoking any previous dues authorization, check off, or continuing membership form that I may have signed." App. 110.

After LaSpina sent her resignation letter, the Library, for approximately two months, continued to deduct membership fees from LaSpina's paycheck. On October 26, 2018, a grievance coordinator for the Union wrote to a Library human resources officer notifying the officer that LaSpina "has submitted a request to withdraw from the Union on August 21, 2018,"

7

and that the Library must "discontinue the payroll deduction for this employee effective immediately." Supp. App. 62. The Union directed the Library to refund LaSpina the membership dues that were deducted from her pay after her resignation, and LaSpina's November 2018 paycheck included a refund of $55.18. App. 9.

On December 3, 2018, the Union advised LaSpina that her resignation from the Union was processed and her status had changed to nonmember as of August 21, 2018. Supp. App. 65. LaSpina also was advised that "[t]he money that was deducted from your pay for dues after August 21, 2018 will be returned to you (if it has not been already) in your paycheck." *Id.* On December 13, the Union issued LaSpina a check for $11.81 for dues deducted for the period of August 21 through August 31, 2018. After the Library received the Union's October 2018 letter, it did not deduct any more dues from LaSpina's pay. App. 9. LaSpina apparently has not cashed the check sent to her by the Union. Appellant Br. 9, 19.

### D. Relying on *Janus*, LaSpina sues

On October 18, 2018, LaSpina sued. In the operative complaint, LaSpina pleaded three counts. First, LaSpina sought a refund of the compulsory portion of the membership dues she made prior to *Janus*. Second, LaSpina sought a refund of the membership dues that were diverted from her wages after she submitted her union-resignation letter and demanded the Union cease deducting membership dues, as well as an injunction to prevent the union and her employer from diverting her wages in the future. Finally, LaSpina sought classwide injunctive relief on behalf of all public employees who are paying some form of dues to the Union but who have not submitted a waiver of their constitutional rights under *Janus*. The District Court dismissed each claim for lack of an Article III case or controversy.

The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1343(a). Whether or not the case suffers from any justiciability problem, we have jurisdiction under § 1291. We

review the District Court's factual findings for clear error and its legal conclusions *de novo*. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475 n.4 (3d Cir. 2016).

## II.  DISCUSSION

### A.  LaSpina has no standing to pursue a refund of pre-*Janus* membership dues

LaSpina first challenges the District Court's conclusion that she has no standing to seek a refund of the compulsory portion of the membership dues she paid to the Union prior to the Supreme Court's issuance of *Janus*.  The elements LaSpina must satisfy to establish Article III standing are familiar.  LaSpina must show injury in fact, causation, and redressability.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  In doing so, the burden rests on LaSpina, "as the party invoking federal jurisdiction," to "clearly . . . allege facts demonstrating" her standing to sue.  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also Hartnett*, 963 F.3d at 305.

This case primarily concerns the second element—whether LaSpina's injury "is fairly traceable to the challenged conduct" of the Union.  *See Spokeo*, 136 S. Ct. at 1547.  We have previously explained that the traceability element is "akin to 'but for' causation in tort."  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193-94 (3d Cir. 2016) (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013)).  Employing the "but for" framework, we ask, had the Union's conduct that LaSpina challenges not occurred, would she have suffered injury?  If she would have, then the challenged conduct did not actually cause LaSpina's injury; if not, then it did.

Analyzing the traceability in this way demands that we define precisely LaSpina's claimed injury, the conduct of the Union she challenges, and the link between the two.  *Cf. Finkelman*, 810 F.3d at 197 (observing that "[t]he choice among alternative definitions of the injury may control the determination of causation" and therefore recommending "examin[ing]

9

the allegations in the complaint from a number of different angles to see if [plaintiff's] purported injury can be framed in a way that satisfies Article III") (first alteration in original). A direct causal relationship between alleged injury and challenged conduct, of course, will satisfy the traceability element. *See Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 481 (3d Cir. 2018). So too will an indirect one, "provided that there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.*

To start, LaSpina does not advance the paradigmatic *Janus* injury. Unlike the plaintiff in *Janus*, LaSpina was a member of the Union and paid full membership dues, not a nonmember who paid compulsory fair-share fees. *Janus*, 138 S. Ct. at 2462. *Janus* holds that nonmembers compelled to pay fees to a union they declined to join suffered First Amendment injury. *Id.* at 2486; *see Hartnett*, 963 F.3d at 305. It is less clear whether a union member who paid membership dues suffered any constitutional injury at all.

LaSpina's conception of her injury is difficult to isolate. Part of the reason, it seems, is that LaSpina seeks to represent not just herself but a class of similarly situated employees. As such, she must claim an injury shared by the rest of the purported class. LaSpina contends that "the 'injury in fact' that [she] and the putative class members have suffered is that they were forced to *pay* money to [the Union] whether they joined the union or not." Appellant Br. 14. This, however, describes at least two distinct injuries. LaSpina *the individual* did not suffer injury because she was "forced to pay money to [the Union] whether [she] joined the union or not." *Id.* (emphasis omitted). LaSpina *joined* the Union, and any injury she might have suffered arose out of that reality. An injury that a plaintiff could have suffered had she made a different decision sometime in the past would not be "actual"; it would be "conjectural or hypothetical." *See Mielo*, 897 F.3d at 478 (quoting *Spokeo*, 136 S. Ct. at 1548). In such a case, there would be no injury in fact to support Article III standing.

LaSpina clarifies her alleged individual injury elsewhere. She contends she was injured because she was "forced to pay money to the [Union] as a condition of *her* employment." App. 94 (emphasis added). That alleged injury is consistent with LaSpina's proposed relief—a refund only of "the compulsory *portion* of her union-membership dues, *i.e.*, the amount equal to the fair-share fees that would have been imposed had she declined union membership." Appellant Rep. Br. 2; *see also* App. 101 (demanding a refund "to every class member the money that *they* were compelled to pay to the union as a condition of their employment") (emphasis added).

By LaSpina's reckoning, then, the membership dues she paid the Union included a compulsory and non-compulsory amount. The compulsory amount equaled the amount charged to those who declined membership and paid a fair-share fee. LaSpina contends she was injured because she, like nonmembers, had to pay the Union at least the amount charged as fair-share fees.

With her injury clearly defined, we move to its cause. LaSpina claims her injury was caused by the Library's unconstitutional enforcement of the Library as an agency shop. Appellant Br. 13. Importantly, LaSpina identifies *Janus* as the source of that constitutional injury. *See* App. 90-94. But *Janus* does not concern the constitutionality of agency shops, as such. *Janus* holds that compelling nonmembers to pay the union a fee violates the First Amendment. *Janus*, 138 S. Ct. at 2486.

LaSpina cannot satisfy causation. Take the plaintiff from *Janus*. He was employed in an agency shop but declined to join the union. *Id.* at 2461. He alleged he was injured because he was compelled to subsidize a union he had declined to join. *Id.* at 2462 ("The amended complaint claims that all 'nonmember fee deductions are coerced political speech' and that 'the First Amendment forbids coercing any money from the nonmembers.'"). The Supreme Court agreed, concluding that he "clearly" had standing. *Id.*

11

The same cannot be said of LaSpina. Like the plaintiff in *Janus*, LaSpina was employed in an agency shop. So she claims she was injured just as he was because, like the nonmembers, she was compelled to pay the Union an amount equal to the amount charged to nonmembers as a fair-share fee. But, unlike the plaintiff in *Janus*, LaSpina joined the Union and paid membership dues. That breaks the causal chain. Had it not been for the Union's First Amendment violation, that is, had it not been for the Union "compelling [nonmembers] to subsidize private speech on matters of substantial public concern," *id.*, LaSpina *still* would have had to pay as a component of *her* union membership dues an amount equal to the amount charged to nonmembers as a fair-share fee. Thus, the Union's conduct was not the "but for" cause of LaSpina's alleged injury, resulting in her lacking standing to pursue this claim.

LaSpina's theory of causation suffers from two defects. First, LaSpina misunderstands what *Janus* demands. The core of *Janus* concerns not the constitutionality of agency *shops*, as such, but the constitutionality of compulsory agency *fees*. *Janus*, 138 S. Ct. at 2459-60 (compelling nonmembers "to subsidize a union . . . violates the[ir] free speech rights"). And any injury predicated on *Janus* must stem from that core holding.

Second, LaSpina misunderstands causation's "but for" framework. At the first step of the analysis, a court must isolate and change one and only one variable. In assessing whether the defendant's particular conduct caused the plaintiff's injury, the variable to isolate and change is the conduct of the defendant the plaintiff challenges. In this case, that variable is the Union's extraction of compulsory fair-share fees from nonmembers. But as shown, even if the Union did not extract those fees, LaSpina still would have suffered the precise injury she alleges she did.

To address this deficiency in her theory of standing, LaSpina pleads that, had the Union not violated the First Amendment by charging nonmembers fair-share fees, she would not have joined the Union and, therefore, never have paid the Union any dues. App. 88 ("Ms. LaSpina would never

12

have joined the union had she known that she had a right to refuse union membership.").

It is true that we do not require the plaintiff to allege that the defendant's conduct directly caused her injury. *See Mielo*, 897 F.3d at 481. Especially at the pleading stage, where the "burden of establishing causation . . . is less stringent," *id.*, standing may be satisfied even if the plaintiff alleges an indirect (or multistep) causal relationship between the defendant's conduct and her injury. *Id.* But the plaintiff must still clearly allege facts showing a "fairly traceable connection" between her injury and the conduct of the defendant she challenges. *Id.*

Here, LaSpina's theory of standing requires us to change two variables—the Union's extraction of fair-share fees *and* her decision to join the Union when she began employment. That in itself is not fatal to her establishing standing. What is fatal to LaSpina's standing is that she asks us to change those two variables without explaining how the second (her joining the Union) links to the first (the Union's collection of fair-share fees from nonmembers). Moreover, even if we could deduce an indirect causal relationship between those two variables and her injury, the second variable (her joining the Union) primarily is a function of the conduct of the Library's human resources officer, further stretching and weakening the causal chain. *See id.*

LaSpina joined the Union and paid Union membership dues. She cannot connect those events to the Union's alleged misconduct. Her claimed injury of economic loss occurred not because of the Union's actions toward nonmembers but because of her decision to join the Union. That decision and the injury she claims happened as a result were not caused by the conduct of the Union she challenges. Thus, there is no but-for causation, and, as a result, she does not have standing to press this claim.[1]

---

[1] Because LaSpina frames her alleged injury as her being compelled to pay an amount of money to the Union whether she

**B. LaSpina has failed to plead a federal cause of action for a refund of erroneously deducted post-*Janus* membership dues**

LaSpina next seeks a refund of membership dues erroneously deducted from her paycheck after she resigned from the Union. LaSpina argues that the Union's "refusal to promptly honor" her resignation and cease deducting union dues "violated the Speech Clause and the Supreme Court's ruling in *Janus*." App. 94. The deduction of membership dues without authorization in this context may be an injury. It is just not a constitutional one. And certainly *Janus* compels no such result.

*Janus* does conclude that public-sector unions cannot collect "an agency fee []or *any other payment* . . . from a nonmember's wages" unless the employee "clearly and affirmatively consent[s] before any money is taken." *Janus*, 138 S. Ct. at 2486 (emphasis added). Here, LaSpina presumptively became a "nonmember" of the Union when she mailed her resignation letter on August 20, 2018. *See* App. 110. In that letter, she gave clear and affirmative dissent. *Id.* ("I no longer wish to pay dues or fees to the union[,] . . . and [I am] revoking any previous dues authorization, check off, or continuing membership form that I may have signed."). Despite those instructions, for a period of approximately two months, the Union continued to deduct union dues from LaSpina while she was, in a strict sense, a nonmember.

---

joined or not, we need not consider her separate allegations that she was "induced" to join the Union and that, "[h]ad [she] been informed of her right to decline union membership and pay 'fair share fees', she would have chosen that option." App. 88-89. A federal court appears to be a particularly inappropriate forum for a dues-paying union member to press such a claim. LaSpina seems to regret her decision to join the Union, but whether she was "induced" to do so involves intricate issues of state contract and labor law, issues better left to the state courts or an appropriate agency.

But *Janus*'s allusion to "any other payment . . . from a non-member[]" must be read in context. In the topic sentence of the paragraph that includes that holding, the Court made clear it was primarily demarcating the constitutional rights of nonmembers currently or previously employed in agency shop arrangements. *See Janus*, 138 S. Ct. at 2486 (holding that "*[t]his* procedure," that is, the procedure by which "[s]tates and public-sector unions . . . extract *agency fees* from *nonconsenting* employees," "violates the First Amendment") (emphases added). Until *Janus* gave LaSpina reason to resign from the Union, LaSpina was a dues-paying member. She was never compelled to pay the Union agency fees.

The *Janus* Court's language that no "other payment" may be taken from a nonmember without consent should also be read as the Court's attempt to encapsulate the differing terminology used by the twenty-odd states that had permitted agency shop arrangements before *Janus* invalidated them. The primary legal effect of *Janus* was to invalidate the Illinois state law that permitted unions to collect "agency fees" from nonmembers, *see id.* at 2460-61, but the Court's reasoning necessarily extended to all "States," *id.* at 2486, some of which, like Pennsylvania, called them "fair-share fees," *Diamond*, 972 F.3d at 268 (holding that, "under *Janus I*, Pennsylvania's public sector agency shop law," which compelled nonmembers to pay "fair-share fees," "was no longer constitutional").

*Janus* does not condone punishing unions for their attempt to implement a new constitutional regime after the old one had been in place for over forty years. That old regime supported the statutory schemes of nearly half the states, underpinning thousands of collective bargaining agreements involving millions of employees. *See Janus*, 138 S. Ct. at 2499 (Kagan, J., dissenting). Indeed, even the *Janus* Court recognized that its ruling would impose "transition costs" on the parties that had come to rely on the previous regime and had built statutory schemes around it. *See id.* at 2485.

Here, the record evidence suggests that the Union immediately sought to comply with *Janus*'s new constitutional rule.

15

The day *Janus* was decided, the president of SEIU Local 668 informed the Scranton Public Library that the "Supreme Court has ruled in *Janus* . . . . [and] has held [that] public-sector employers may no longer deduct agency fees from non-consenting employees." Supp. App. 69. The president directed the Library to "immediately" cease requesting or deducting fair-share fees from nonmember employees. Given the enormity of the task faced by public-sector unions in the wake of *Janus*, and the lack of any direction from the Supreme Court that the period in which union members transitioned to nonmembers could give rise to new constitutional violations, we decline to find any First Amendment violation under *Janus* for an employer's or union's failure to promptly process a member's resignation notice and terminate the associated dues deductions.[2]

---

[2] Because we conclude that LaSpina's Count II fails to plead a federal constitutional claim, we need not decide whether that claim is now moot. After LaSpina filed her Complaint, the Union attempted to refund LaSpina the membership dues deducted from her paycheck after she submitted her resignation letter. To do so, the Union appears to have remitted part of the sum (about $55) to LaSpina through her paycheck and the balance (about $12) by mailed check. LaSpina claims, and we must accept as true, that she refuses to accept and has not yet cashed that check. *See, e.g.*, Appellant Br. 23. In *Campbell-Ewald v. Gomez*, 577 U.S. 153 (2016), the defendant filed an offer of judgment under Rule 68 in an attempt to settle the plaintiff's individual claim. *Id.* at 667. After the plaintiff allowed the Rule 68 offer to lapse, the defendant moved to dismiss under Rule 12(b)(1), contending the unaccepted offer mooted the case. *Id.* at 668. The Court held "an unaccepted offer to satisfy [a] named plaintiff's individual claim [is not] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Id.* at 666. It further stated that "in accord with Rule 68 of the Federal Rules of Civil Procedure . . . an unaccepted settlement offer has no force." *Id.* The Court declined to consider, however, "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 672.

16

## C. LaSpina's claim that *Janus* demands the Union obtain First Amendment waivers from all employees is now moot

LaSpina finally seeks to enjoin the Union from taking money from her paycheck or the paycheck of other Union employees until all employees, pursuant to *Janus*, "waive[] [their] constitutional right to withhold money from the union."  App. 95.  The District Court concluded that LaSpina lacked standing to assert this Count against the Union.  App. 38-39 ("[P]laintiff lacks standing to proceed with her claim in Count 3 against Local 668 and [Scranton Public Library] . . . . since plaintiff is not suffering and will not suffer in the future any injury due to defendants' alleged conduct.").  Although the District Court's bottom line was correct, it identified the wrong justiciability doctrine.  Whether LaSpina had standing to pursue that claim when she filed her complaint is a close question, but the claim undoubtedly is moot now.

A claim is moot if it no longer presents a "live" controversy or the parties no longer have a personal stake in the claim's resolution.  *Hartnett*, 963 F.3d at 305.  The vitality of the controversy and the parties' personal stakes in it must exist not just at the outset of the litigation, but throughout its duration.  *Chafin v. Chafin*, 568 U.S. 165, 171-72 (2013).  Therefore, "if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot."  *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993).

LaSpina no longer has a personal stake in the resolution of this claim.  At filing, LaSpina sought (1) an order requiring the Union to "immediately honor and enforce" an employee's membership resignation and withdraw of financial support; (2) a declaration that the Union is violating the Constitution by deducting membership or other fees from employees who have

---

Taken together, and assuming *Campbell-Ewald* applies, these holdings suggest that LaSpina's refusal to cash the check may be sufficient to defeat mootness.

not waived their rights under *Janus*; and (3) a permanent injunction preventing the Union from deducting membership dues or other fees from employees until those employees provide consent pursuant to *Janus*. App. 102-03. It is undisputed that the Union has processed LaSpina's resignation, Supp. App. 67, and has ceased collecting any dues or fees, App. 85. Thus, there is no lingering membership resignation for the District Court to enforce or involuntary payments for it to halt.

LaSpina insists her individual claim is not moot because the Union's or Library's decision to halt deducting her membership dues "is a textbook example of 'voluntary cessation,'" which "cannot moot a plaintiff's claim for declaratory and injunctive relief." Appellant Br. 25 (citations omitted). It is true that the Union or Library halted deductions only after LaSpina sought relief from the courts. Nevertheless, these facts present a strong case for mootness notwithstanding the voluntary cessation of the offending conduct.

Until *Janus*, the Union was permitted to collect fair-share fees from nonmembers. And until LaSpina submitted her resignation, the Union was permitted to collect membership dues from her. Once the Supreme Court issued *Janus*, the Union conceded that the compulsory collection of fees from nonmembers violates the First Amendment and immediately instructed the Library to cease their collection. Supp. App. 69. LaSpina concedes that the Union no longer extracts any fees from her, App. 85, and we see no reasonable likelihood that the unions will try to collect any fees from nonmembers again. *See Hartnett*, 963 F.3d at 307.

LaSpina's citation to *Knox v. SEIU Local 1000*, 567 U.S. 298 (2012), is easily distinguished. In that case, a California branch of the SEIU charged nonmembers a special assessment for work supporting the union's political objectives. *Id.* at 303-04. A group of nonunion employees who paid the special assessment brought a class action against the union alleging First Amendment violations. *Id.* at 305-06. After the Supreme Court granted certiorari, the union offered to satisfy the

18

plaintiffs' claims, but it continued to insist that its imposition of the assessment was legal. *Id.* at 307.

In finding that the plaintiffs' claims were not moot, the Court observed that the "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Id.* The Court reasoned that resumption was particularly likely because the union continued to defend the constitutionality of the challenged conduct. As a result, the Court thought it "not clear why the union would necessarily refrain from collecting similar fees in the future." *Id.* That worry is not applicable here. Here, the Union stopped collecting fair-share fees the day *Janus* was decided and never has attempted to collect any such fees from LaSpina.

While LaSpina's individual claim is moot, we also must examine whether her classwide claims survive because, in certain circumstances, "class claims can breathe life into an otherwise moot case" and permit an individual plaintiff "to continue seeking class certification." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 305 (3d Cir. 2016) (internal citations and quotations omitted). For example, when a plaintiff files a motion to certify a class when his individual claim still is live, the mooting of that claim while the motion is pending permits the court to decide the certification motion. *Id.* at 305. In that case, the plaintiff remains able to vigorously press the class's claims. *Id.* at 305-06.

No such circumstance is present here. LaSpina has not yet moved for class certification and maintains no personal stake in the resolution of this claim. The lack of personal stake in the resolution of the claim makes LaSpina a particularly inappropriate class representative. *See id.* at 306 ("[T]he critical question is whether a plaintiff had a live claim at the time the operative motion to certify was filed."); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 403-04 (1980). Because LaSpina's individual claim is moot and she has not filed for class certification, the class claims do not survive either.

## D. The District Court need not grant leave to LaSpina to file a Third Amended Complaint

Finally, the District Court should not feel compelled to grant LaSpina leave to amend her Second Amended Complaint should she seek to do so. Generally, the district courts should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). That principle is particularly potent in civil rights cases. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). But even in civil rights cases, leave to amend need not be granted if "amendment would be futile or inequitable." *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Here, LaSpina already has amended her complaint twice and, when pressed at oral argument, failed to suggest what she might add were the District Court to grant leave to amend it again. Thus, amendment would be futile.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court.

20