**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-3096, 21-3097, and 22-1108
_____

BRADLEY BARLOW,

Appellant in case no. 21-3096

v.

SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 668; MICHAEL NEWSOME, in his official capacity
as Secretary of the Pennsylvania Office of Administration;
BRIAN T. LYMAN, in his official capacities as Chief
Accounting Officer for the Commonwealth of Pennsylvania
and Deputy Secretary for the Office of Comptroller
Operations

FRANCES BIDDISCOMBE,

Appellant in case no. 21-3097

v.

SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 668; MICHAEL NEWSOME, in his official capacity
as Secretary of the Pennsylvania Office of Administration;
BRIAN T. LYMAN, in his official capacities as Chief
Accounting Officer for the Commonwealth of Pennsylvania

and Deputy Secretary for the Office of Comptroller Operations

MIRIAM FULTZ; DARLEEN DALTO; LUCINDA RADAKER; LACEY BAINBRIDGE; CAROL SHANER; JASON KOHUTE; KURTIS COATES; LISA SOUTHERS; BRITTANY ZAPPASODI; SCOTT CARTER; DEBRA KERSTETTER; ASHLEY CLUCK; BLAINE CHAPMAN; BARBARA RICHTER,

Appellants in case no. 22-1108

v.

AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, Council 13; GOVERNOR OF PENNSYLVANIA; MICHAEL NEWSOME, in his official capacity as Secretary of the Pennsylvania Office of Administration; BRIAN T. LYMAN, in his official capacities as Chief Accounting Officer for the Commonwealth of Pennsylvania and Deputy Secretary for the Office of Comptroller Operations

_____

On Appeal from The United States District Court for the Middle District of Pennsylvania (D.C. Nos.: 1-20-cv-02459; 4-20-cv-02462; and 1-20-cv-02107) District Judges: Honorable Yvette Kane; Honorable John E. Jones, III

_____

Argued: September 20, 2023

Before: RESTREPO, MCKEE, and RENDELL, *Circuit Judges*

(Filed: January 12, 2024)

Danielle R. Acker Susanj
Stephen B. Edwards **[ARGUED]**
Nathan J. McGrath
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, PA 17101
      *Counsel for Appellants*

Ramya Ravindran **[ARGUED]**
BREDHOFF & KAISER, P.L.L.C.
805 15th Street, N.W., Suite 1000
Washington, DC 20005

Amy L. Rosenberger
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
      *Counsel for Appellee AFSCME, Council 13*

Scott A. Kronland **[ARGUED]**
Jeffrey B. Demain
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108

Lauren M. Hoye
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
       *Counsel for Appellee SEIU Local 668*

Michelle Henry, Attorney General
Michael J. Scarinci, Deputy Attorney General **[ARGUED]**
J. Bart DeLone, Chief Deputy Attorney General, Appellate
Litigation Section
OFFICE OF THE PENNSYLVANIA ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120
       *Counsel for Appellees Michael Newsome, Bryan T.*
       *Lyman, and Thomas Wolf*

———————————————

OPINION OF THE COURT
———————————————

RESTREPO, *Circuit Judge.*

Bradley Barlow and Frances Biddiscombe were members of Service Employees International Union (SEIU) Local 668, the bargaining unit representing employees of the Pennsylvania Department of Human Services (DHS). They each signed new union membership applications in June of 2018, voluntarily authorizing paycheck dues deductions. The authorizations were valid from year to year and irrevocable, regardless of membership status, unless the member provided written notice of revocation within a specified annual window of at least ten days and not more than thirty days before the end

of any yearly period. Barlow and Biddiscombe each submitted letters of resignation from SEIU Local 668 in July of 2020, after their annual revocation windows had passed. Pursuant to the authorizations, SEIU Local 668 continued to deduct membership dues until the annual revocation windows reopened in May and June of 2021.

Miriam Fultz and thirteen other members of the American Federation of State, County, and Municipal Employees (AFSCME), Council 13, also signed union membership agreements in which they voluntarily authorized the deduction of membership dues from their paychecks. Those authorizations were irrevocable, regardless of union membership status, unless the member provided written notice of revocation during the fifteen days before the annual anniversary date of the authorization. The fourteen members each submitted letters of resignation from their union in 2020, either before or after their respective annual revocation windows were open. AFSCME, Council 13 notified each of them that, pursuant to their agreements, membership dues deductions would continue until a written request was resubmitted during the next annual revocation window several months to nearly a year later.

Despite having voluntarily joined their respective unions and authorizing ongoing dues deductions—regardless of membership status—in accordance with their membership agreements, none of the resigned union members were content to keep paying dues until their next annual revocation window period rolled around. Unlike many annual magazine or streaming app subscription fees, the former members' authorized paycheck deductions could not be halted immediately by arguing with a customer service rep or lodging a credit card charge dispute. So, they sued.

Invoking the Supreme Court's 2018 decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, Appellants alleged deprivation of their First Amendment rights to be free from compelled speech in the form of union dues deductions. 138 S. Ct. 2448 (2018). But *Janus* demarcated the constitutional rights of nonmembers employed in agency shop arrangements who never elected to join a union, not members who voluntarily join a union and later resign. Accordingly, the District Court properly dismissed Appellants' complaints. For the reasons that follow, we will affirm.

## I. BACKGROUND

Beginning in 1977 with *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and for forty-one years thereafter, certain designated unions[1] could charge dues in the form of "agency shop" service fees to all employees in a bargaining unit, even those who elected not to join the union. *Id.* at 232, 235–36. Nonmember agency shop fees were typically only a percentage of the full rate paid by members, and the union was prohibited from paying for "political and ideological projects" with dues paid by nonmembers. *Janus*, 138 S. Ct. at 2460–61 (explaining the difference between "chargeable" and "nonchargeable" expenditures under *Abood*). The theory was that because union representatives were

---

[1] *Abood* involved unions that were designated as the "exclusive representative" of all employees in a bargaining unit, which means that "individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer." 431 U.S. at 224; *Janus*, 138 S. Ct. at 2460.

required by law to provide fair representation to all employees in a bargaining unit, regardless of membership status, employees who were not members benefitted from the representation and could be required to pay dues. *Id.*; *Abood*, 431 U.S. at 224.

This changed in 2018, when the Supreme Court overturned *Abood* in *Janus*, holding that public-sector unions charging fees to nonmembers is a form of coerced speech that violates the First Amendment. *Janus*, 138 S. Ct. at 2467 ("In simple terms, the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay."). Though *Janus* spurred a sea change in public-sector union administration, it included an important limitation: *Janus* was focused on preventing forced speech by nonmembers who never consented to join a union. *Id.* at 2464 ("Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence.") (quoting *W. Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 633 (1943) and citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988)).

Appellants in the consolidated cases before us claim that—like charging union dues to nonmembers in *Janus*—their unions' continued collection of dues after Appellants had resigned from union membership constitutes compelled speech in violation of the First Amendment. The first two cases, brought by Barlow and Biddiscombe, are functionally identical and were consolidated in the court below. The *Fultz* case is a

7

putative class action involving fourteen named plaintiffs and the same substantive claims as Barlow and Biddiscombe, with an additional claim by a subclass of existing union members that their membership agreements are unenforceable for lack of consideration. Appellants collectively challenge the District Court's decisions to grant Appellees' motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c).

## A. Barlow and Biddiscombe

Pursuant to the Pennsylvania Public Employe (sic) Relations Act (PERA), 43 P.S. §§ 1101.101–2301, SEIU Local 668 and the Commonwealth maintain a collective bargaining agreement that controls the terms and conditions of Pennsylvania DHS workers' employment and designates SEIU Local 668 as the exclusive representative of all employees in the bargaining unit. The agreement also provides for the Commonwealth to deduct union membership dues from the employee's pay and remit those dues to the union. *See* 43 P.S. § 1101.606 (providing for exclusive representation); § 1101.705 (authorizing membership dues deductions).

Bradley Barlow started working for the DHS in September 2017 and joined SEIU Local 668 sometime thereafter. He signed a new membership application on June 25, 2018, two days before the Supreme Court's decision in *Janus*. In doing so, he agreed that:

> This voluntary authorization and assignment of dues deduction shall be irrevocable, regardless of whether I am or remain a member of the Union, for a period of one year from the date of execution and for year to year thereafter as long as my employment continues, unless I give the Employer and the Union written notice of

8

> revocation not less than ten (10) days and not more than thirty (30) days before the end of any yearly period . . . .

J.A. 381.

After the *Janus* decision, Barlow resigned from SEIU Local 668 on July 14, 2020, a month after his annual resignation window period had closed. Consistent with the authorization, SEIU Local 668 continued to deduct dues from Barlow's paycheck for eleven months thereafter. Barlow alleges that during this time he was not provided any information about how his dues were spent, nor with a procedure for objecting thereto.

Frances Biddiscombe joined the DHS and SEIU Local 668 in 2014. On June 7, 2018, several weeks before *Janus*, Biddiscombe signed a membership application that was identical to Barlow's. She resigned from SEIU Local 668 on or about July 9, 2020, six weeks after her annual resignation window closed. And pursuant to the membership agreement, SEIU Local 668 continued to deduct union dues from Biddiscombe's paycheck until May 2021.

Barlow's and Biddiscombe's respective lawsuits involved the same claims against the same defendants. They sued SEIU Local 668, as well as two government officials—Michael Newsome and Bryan T. Lyman[2]—in federal court for

---

[2] Defendant-Appellee Newsome is the Secretary of the Office of Administration for Pennsylvania, and "negotiated, entered into, and is the signatory to, on behalf of the Commonwealth," the collective bargaining agreement

violation of their rights to freedom of association and to be free from compelled speech under the First Amendment under *Janus*. They also claimed that failure to provide them with procedures for notification and objection to how their post-resignation dues were being spent violated their Fourteenth Amendment due process rights. They sought damages in the amount of post-resignation dues collected, and injunctive and declaratory relief.

The District Court consolidated the similar matters for briefing on Appellees' motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(c).[3] The Court dismissed in full, finding no First Amendment claim because "Plaintiff[s] voluntarily consented to join the union and pay dues," and "*Janus* 'protects nonmembers from being compelled to support the [u]nion,' but it does not 'render [a union member's] knowing and voluntary choice to join [the union] nonconsensual.'" *Barlow v. SEIU Local, 668*, 566 F. Supp. 3d 289, 298 (M.D. Pa. 2021) (quoting *Oliver v. SEIU Local 668*, 830 Fed. App'x 76, 79 (3d Cir. 2020)); *Biddiscombe v. SEIU, Local 668*, 566 F. Supp. 3d 269, 281 (M.D. Pa. 2021) (quoting *Oliver*, 830 Fed. App'x at 79).

---

governing the terms and conditions of employment for Plaintiff-Appellants and is responsible for human relations for Commonwealth Employees. J.A. 123. Defendant-Appellee Lyman is the Chief Accounting Officer and Deputy Secretary for the Office of Comptroller, and "oversees the payroll system for the Commonwealth, which includes processing union dues and other payroll deductions. *Id*.

[3] At the time, there was a third case involving another plaintiff with similar claims pending before the same District Court Judge, which is not at issue here.

The Court similarly rejected Appellants' due process claims because "*Janus* did not confer any new rights upon public employees who had voluntarily joined a union and agreed to pay dues; . . . render preexisting union membership agreements constitutionally infirm;" or give "rise to an obligation on the part of Local 668 to provide Plaintiff[s] with notice of [their] constitutional rights after [they] resigned from membership." *Barlow*, 566 F. Supp. 3d at 302; *Biddiscombe*, 566 F. Supp. 3d at 285. Additionally, the District Court found that Barlow's and Biddiscombe's requests for prospective relief were moot because the union was no longer collecting dues from them. *Barlow*, 566 F. Supp. 3d at 296; *Biddiscombe*, 566 F. Supp. 3d at 279.

## B. The *Fultz* Appellants

Miriam Fultz and the thirteen other named appellants in this putative class action are "public employees" of the Commonwealth of Pennsylvania. *See* 43 P.S. §§ 1101.301(2); 1101.301(15). Eight of the fourteen, including Fultz herself, joined AFSCME, Council 13[4] prior to the *Janus* decision in June 2018, while the other six joined after *Janus*. Each party signed a membership card consenting to "voluntarily authorize and direct my Employer to deduct from my pay each pay period, regardless of whether I am or remain a member of the Union, the amount of dues certified by the Union." J.A. 8. They also agreed that:

> This voluntary authorization and assignment shall be irrevocable, regardless of whether I am

---

[4] AFSCME, Council 13 is an "Employe organization" and a "Representative" as those terms are defined by PERA, 43 P.S. §§ 1101.301(3); 1101.301(4).

or remain a member of the Union, for a period of one year from the date of execution of this authorization or until the termination date of the collective bargaining agreement (if there is one) between my Employer and the Union, whichever occurs sooner, and for the years to come, unless I give my Employer and the Union written notice of revocation during the fifteen (15) days before the annual anniversary date of this authorization or, for public sector contracts, during the fifteen (15) days before the date of termination of the appropriate collective bargaining agreement between the Employer and the Union, whichever occurs sooner.

J.A. 9. The fourteen resigned from AFSCME, Council 13 on various dates between May 8, 2020 and December 23, 2020. They allege that AFSCME, Council 13 notified them that dues would nevertheless continue to be deducted from their paychecks "indefinitely," or at least until the 15-day "escape window." J.A. 131.

On November 12, 2020, the *Fultz* Appellants sued AFSCME, Council 13, former Pennsylvania Governor Thomas Wolf, Michael Newsome, and Brian T. Lyman. The District Court stayed proceedings pending resolution of *Fischer v. Governor of N.J.*, 842 F. App'x 741 (3d Cir. 2021). After that decision, which non-precedentially rejected very similar claims, Appellants filed an Amended Complaint on March 1, 2021, alleging First Amendment and Fourteenth Amendment procedural due process violations similar to Barlow's and Biddiscombe's.

12

The *Fultz* suit includes three proposed subclasses: (1) persons who were already members of Council 13 when they signed the relevant membership applications pre-*Janus*; (2) persons who signed first-time applications before *Janus*; and (3) persons who signed first-time applications after *Janus*. Defendants filed motions to dismiss under Rule 12(b)(6) for failure to state a claim, and in the alternative, for summary judgment. In response, Appellants in the subclass of those who were already members of Council 13 when they signed the relevant membership applications alleged for the first time that their applications were unenforceable for lack of consideration, because they were already receiving the benefits of membership when they agreed to pay dues for another year.

The District Court rejected the *Fultz* Appellants' First Amendment claims for largely the same reasons as in *Barlow* and *Biddiscombe*, and rejected their due process claim as duplicative of the First Amendment claim. Finally, it rejected the subclass's contract claim because it was not raised in the pleadings.

## II. DISCUSSION [5]

The District Court dismissed the *Fultz* Appellants' claims for failure to state a claim under Rule 12(b)(6), and

---

[5] The District Court had subject-matter jurisdiction over each of the three now-consolidated cases pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). We have jurisdiction under 28 U.S.C. § 1291. In *Barlow* and *Biddiscombe* (Nos. 21-3096 and 21-3097), the District Court dismissed the Complaints with prejudice, resulting in "final decisions" within the purview of 28 U.S.C. § 1291. *Manze v. State Farm Ins. Co.*, 817 F.2d

13

Barlow's and Biddiscombe's under Rules 12(b) and 12(c). We review the District Court's dismissal of Appellants' constitutional and contract-based claims de novo.[6] *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (explaining that "[r]eview of the legal component for either [a Rule 12(b)(6) or 12(c)] motion[] is identical," and that decisions under both are evaluated by a reviewing court de novo).

## A. First Amendment Claims

*Janus* established a new constitutional right for nonmembers to be free from compulsory paycheck deductions in support of a union they never consented to join. But this right does not extend as far as Appellants urge us to hold. The Court in *Janus* recognized that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." 138 S. Ct. at 2486. "By agreeing to pay, nonmembers are waiving their First Amendment rights, and such waiver cannot be presumed." *Id*. (citations omitted).

---

1062, 1064 (3d Cir. 1987). In *Fultz* (No. 22-1108), final judgment was entered when the parties stipulated to dismissal of the one due process claim remaining after the District Court partially granted Appellees' motions to dismiss.

[6] On appeal, Biddiscombe and Barlow do not challenge the dismissal of their claims for prospective relief, which were their only claims against Commonwealth defendants Michael Newsome and Bryan T. Lyman. As such, only the *Fultz* Appellants' claims against the Commonwealth stand.

14

This language, Appellants argue, entitles them to proceed to discovery to determine whether their agreements to pay constituted waivers that were "freely given and shown by 'clear and compelling' evidence." *Id.* (quotation and citation omitted). But this reading ignores the reality that Appellants were union members who affirmatively consented to have dues deducted from their paychecks for a time certain thereafter, regardless of membership status, and whose status converted to nonmember only *after* they resigned from their respective unions, not "*before* any money [was] taken from them[.]" *Id.* (emphasis added).

We clarified the limited scope of *Janus*'s use of the term "union nonmember" in *LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 288 (3d Cir. 2021). *LaSpina* involved a claim by a union member who sought return of dues voluntarily paid pre-*Janus*,[7] as well as a refund of dues deducted after she resigned from her union. We held that the latter was not a constitutional violation under *Janus*, noting that while, technically, plaintiff was indeed a union "nonmember" after she resigned, that is not how *Janus* used the term when it stated that unions could not collect payment "from a nonmember." *Id.* at 287–88 (citing *Janus*, 138 S. Ct. at 2486) ("In the topic sentence of the

---

[7] In *LaSpina*, we rejected Appellant's claim on standing grounds for lack of causation. 985 F.3d at 286 ("[U]nlike the plaintiff in *Janus*, LaSpina joined the Union and paid membership dues. . . . [H]ad it not been for the Union 'compelling [nonmembers] to subsidize private speech on matters of substantial public concern,' LaSpina still would have had to pay as a component of her union membership dues an amount equal to the amount charged to nonmembers as a fair-share fee.") (emphasis omitted) (internal citation omitted).

15

paragraph that includes that holding, the Court [in *Janus*] made clear it was primarily demarcating the constitutional rights of nonmembers currently or previously employed in agency shop arrangements.").[8]

The First Amendment does not provide a right to disregard promises that would otherwise be enforced under state law. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Based on this premise, the Ninth Circuit in *Belgau v. Inslee*, 975 F.3d 940, 951–52 (9th Cir. 2020), explicitly rejected a reading of *Janus* that would extend generally to union member claims. Because the *Belgau* plaintiffs experienced no compulsion like that addressed by the Supreme Court in *Janus*, for example, through "forc[ing] Employees to sign the membership cards or retain membership status to get or keep their public-sector jobs[,]" *id.* at 950, and because "*Janus* does not address the financial burden of union membership[,]" *id.* at 951, the Ninth Circuit joined the "swelling chorus of courts recognizing that *Janus* does not extend a First Amendment right to avoid paying union dues[,]" *id.*, when those duties arise out of a contractual commitment. *See id.* at 951 n.5 (collecting cases).

After *Belgau*, other Courts of Appeals including the Seventh, Eighth, and Tenth followed suit, universally rejecting pre-*Janus* claims like the claims before us for the same reason. *See Hendrickson v. AFSCME, Council 18*, 992 F.3d 950, 961

---

[8] Plaintiff also claimed that the union should be required to obtain a full constitutional waiver before extracting any further dues from her or any other employees. We did not address that claim because it was moot, as her claim was styled as seeking prospective relief and she was no longer a union member subject to any dues. *Id.* at 289.

16

(10th Cir. 2021); *Bennett v. AFSCME, Council 31*, 991 F.3d 724, 731 (7th Cir. 2021); *Burns v. Sch. Serv. Emps. Union Loc. 284*, 75 F.4th 857, 861 (8th Cir. 2023). Thus far, only the Seventh Circuit has specifically addressed a post-*Janus* claim like those of the *Fultz* subclass, where a plaintiff had signed a membership agreement after the June 2018 *Janus* decision and then subsequently resigned from the union. [9] *See Ramon Baro v. Lake Cnty. Fed'n of Teachers Local 504*, 57 F.4th 582, 586 (7th Cir. 2023). The Court held that "the timing makes no difference. What matters is the nature of each person's decision to sign a private contract." *Id*. We agree.

Although Appellants urge us to depart from the reasoning of our sister circuits, we choose, instead, to rely on the principle adopted by the Supreme Court in *Cohen* that state contract law, not the First Amendment, governs their claims. *See Belgau*, 975 F.3d at 950. In *Cohen*, the Court refused to find a specific First Amendment right for the press to be free from generally applicable laws, like those sounding in contract, even where it might interfere with a journalist's reporting. 501 U.S. at 669–70.

The *Cohen* majority highlighted that the law at issue did not "single out the press" or target particular published content. *Id*. at 670. Rather, "[state] law simply requires those making promises to keep them." *Id*. at 671. The parties themselves, as in this case, "determine the scope of their legal obligations," not the state. *Id*. Given the exceptional importance of the press within our First Amendment jurisprudence, the Supreme

---

[9] One of the appellants in *Burns* also raised a post-*Janus* claim, but the Court did not specifically address it in rejecting all claims. 75 F.4th at 859.

Court's decision to uphold the principles of contract law over the First Amendment in that context only enhances *Cohen*'s applicability in other contexts, such as this one.

In sum, *Janus* says nothing regarding a consenting employee's ability to contract to support a union for a time certain in exchange for the benefits of union membership. We reject the notion that Appellants never consented to dues collection because their membership agreements did not constitute a valid waiver of their constitutional rights. Appellants implore us to follow the reasoning of constitutional waiver cases such as *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972), *Fuentes v. Shevin*, 407 U.S. 67 (1972), and their progeny. But these cases are inapposite and every court to weigh in on this argument has held that no such waiver is necessary because there is no constitutional right at issue here. We join our sister circuits in holding that the First Amendment does not extend a right which overrides Appellants' contractual obligations to pay dues until an agreed upon date, regardless of a subsequent choice to relinquish union membership.

B.  Due Process Claims

Appellants argue that even if they must pay post-resignation dues, they are still entitled to procedures for notice and the ability to object to how those dues are spent by the unions under *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986).  Failure to provide such protections, they claim, is a violation of their due process rights. These claims fail on similar grounds as their First Amendment claims.

Prior to *Janus*, when public-sector unions were still permitted to charge fees to union nonmembers under *Abood*, the Supreme Court developed a system of procedures governing that collection. *Hudson*, 475 U.S. at 302–03

18

("[A]lthough the government interest in labor peace is strong enough to support an 'agency shop' notwithstanding its limited infringement on nonunion employees' constitutional rights, the fact that those rights are protected by the First Amendment requires that the procedure be carefully tailored to minimize the infringement.").

Before any fee deductions were made, unions were required to provide nonmembers with: (1) a detailed accounting of how their dues would be spent that distinguishes union expenses relating to collective bargaining (chargeable expenditures) and contract administration from political activity (nonchargeable expenditures); (2) an opportunity to object to this accounting before any dues are deducted from their paychecks; and (3) a procedure for review of the unions' response to any objections by an impartial third-party decisionmaker. *Id*. at 304–09. Like *Janus*, *Hudson* was premised on a desire to avoid subjecting nonconsenting individuals from subsidizing a political agenda with which they disagreed. *Id*. at 303.

Appellants argue, without reference to any authority, that once they resigned from their respective unions, they became nonmembers entitled to *Hudson* procedures. Given that *Janus* was limited to the constitutional rights of nonconsenting nonmembers, it is illogical that such rights would flow from *Janus* for those who consented to pay dues through a certain date. *See LaSpina*, 985 F.3d at 288 (underscoring that reference to rights of "nonmembers" in *Janus* should be understood as those previously subject to agency shop agreements, not formerly consenting members who have simply resigned from the union). We agree with the court below, that *Hudson* is inapplicable given Appellants' failure to allege any First Amendment violations.

## C. Contract Defenses

In opposition to Appellees' motion to dismiss, a subclass of *Fultz* Appellants argued that their membership agreements were invalid for lack of consideration because they were already union members at the time of execution. Alternatively, they argued that the agreements lacked plain terms, or that the union materially breached by failing to perform. The District Court rejected the first two arguments because they were not raised in the pleadings but found that the third failed to state a claim because it was not plausible in light of the explicit member agreement language authorizing post-resignation dues deductions. *Fultz v. AFSCME, Council 13*, 549 F. Supp. 3d 379, 388–89 (M.D. Pa. 2021).

We will affirm on the same basis, but we note that amendment would be futile. Appellants have not alleged that the terms of their original membership agreements entitled them to membership in perpetuity; such agreements are terminable at will. *See Trainer v. Laird*, 183 A. 40, 40–41 (Pa. 1936). Membership is a state of being, the continuation of which would certainly provide adequate consideration supporting any new or additional terms. Further, any such state law claim would nevertheless lie outside the jurisdiction of the federal courts, as the Pennsylvania Labor Relations Board has exclusive jurisdiction over matters stemming from allegations of unfair labor practices pursuant to PERA. 43 P.S. §§ 1101.1201(b)(1), 1101.1301; *see also Hollinger v. Dep't of Pub. Welfare*, 365 A.2d 1245, 1249–50 (Pa. 1976).

## III. CONCLUSION

For the foregoing reasons, we affirm the District Court's orders on all counts.